[No. A028444. First Dist., Div. Four. Jan. 30, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
JEAN MARGARET FAWCETT BENNETT DECKER,
Defendant and Appellant.

1248

COUNSEL

John M. Starr for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Robert R. Granucci, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

ANDERSON, P. J.—After denial of her motion to suppress evidence the trial court found Jean Margaret Fawcett Bennett Decker guilty of simple

possession of a controlled substance. Appellant was granted probation for a period of three years—the conditions of which included a ninety-day jail term, a fine of $400 plus assessment of $200, participation in an outpatient treatment program, drug testing and a search condition.

At approximately 3 a.m. on September 9, 1983, Officer Mark Goings and Officer Ralph Sanzeri of the Pleasant Hill Police Department arrested Ms. Jean M. Bennett Decker for driving under the influence. The officers had noticed that she was driving very slowly. They observed the van she was driving as it stopped in an intersection as if to make a left turn but it just remained there. About five or ten seconds later, she proceeded to make a U-turn and the officers followed her. They observed that she continued to drive very slowly (approx. 10 to 12 m.p.h.) and then her speed began to vary between 12 and 25 miles per hour. They saw her van weave within the lane and at one point it touched the center line. The officers stopped the van.

Ms. Decker was the driver of the van and Officer Goings noticed it took her a long time to produce her driver's license. The officer noticed that she even flipped past it a couple of times while she was looking for it. At this point Officer Goings observed what he believed to be Kahlua and Cream in a glass, in a beverage holder, on top of the console in the van.

When Ms. Decker exited the van, Officer Goings noticed that she looked very pale, was having trouble keeping her balance and was walking very slowly. He also noticed that she spoke slowly and at times would slur her words together. Ms. Decker unsatisfactorily performed various field sobriety tests. Officer Goings smelled no alcoholic beverage on her breath so he assumed that she was under the influence of some type of drug. Ms. Decker was placed under arrest for this offense and put in the back seat of the patrol car. She requested that her van be locked and parked. While complying with this request Officer Goings took Ms. Decker's purse and the drink out of the van and brought them along while they transported Ms. Decker to the police station. His reason for taking the purse was "[b]asically for safe-keeping" and he noticed that she seemed "concerned" about her purse.

When they arrived at the jail her purse and the items within the purse were inventoried pursuant to the police department's normal procedure. The pockets of Ms. Decker's coat were also checked as a part of the booking procedure. During the inventory of her purse the following was discovered: two small baggies of white powder, two hypodermic needles and syringes, one brown glass bottle of white powder, one bag of green vegetable matter, two small funnels, five empty plastic bags, two green capsules, three empty capsules, three round tablets labeled "Valium," one brown plastic bottle

with seven capsules later determined to contain methamphetamine and one chrome tool. (The purse had not been searched at the scene of the arrest.)

 Preliminarily, as appellant urges, we note that federal constitutional law governs this post-Proposition 8 arrest and search. (*In re Lance W.* (1985) 37 Cal.3d 873 [210 Cal.Rptr. 631, 694 P.2d 744]; *People* v. *Dennis* (1985) 172 Cal.App.3d 287.)

## I. *Probable Cause*

 Appellant contends that the seizure of her handbag was without probable cause. Although the officer did not (subjectively) base his seizure and search of appellant's handbag on grounds of probable cause, since it was (objectively) present the search was lawful.

The United States Supreme Court in *Scott* v. *United States* (1978) 436 U.S. 128 [56 L.Ed.2d 168, 98 S.Ct. 1717], was faced with a similar factual situation and held that "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances viewed objectively, justify that action." (At p. 138.) The court explained how it had previously rejected this argument in the case of *United States* v. *Robinson* (1973) 414 U.S. 218 [38 L.Ed.2d 427, 94 S.Ct. 467]. In *Robinson,* the suspect had been searched incident to a lawful arrest. Similarly to the case in *Scott,* the search was challenged because the motivation for the search was not the legal justification for the search incident-to-arrest exception. The court's conclusion is clear: " 'Since it is the fact of custodial arrest which gives rise to the authority to search, it is of no moment that [the officer] did not indicate any subjective fear of the respondent or that he did not himself suspect that respondent was armed.' [Citation.] The Courts of Appeals which have considered the matter have likewise generally followed these principles, first examining the challenged searches under a *standard of objective reasonableness without regard to the underlying intent or motivation of the officers involved.* [Fn. omitted.]" (*Scott* v. *United States, supra,* 436 U.S. at p. 138 [56 L.Ed.2d at p. 178], italics added; see also *People* v. *Adams* (1985) 175 Cal.App.3d 855 [221 Cal.Rptr. 298].)

In the case at bar the appellant has conceded that she was lawfully stopped and arrested and it is clear from the record that Officer Goings acted very reasonably in his arrest of appellant. Further, based on the obvious intoxicated state of appellant, the lack of the smell of an alcoholic beverage on her breath and the drink found in the van, Officer Goings had probable cause to search Ms. Decker's car for drugs. This would also have justified

going into any container in which the object of the search might be found. (*United States* v. *Ross* (1982) 456 U.S. 798, 825 [72 L.Ed.2d 572, 594, 102 S.Ct. 2157].) Since someone who is using drugs often carries them on their person or close by, an immediate search of Ms. Decker's handbag for drugs would be justified on grounds of probable cause.

■ When there is probable cause to search at the scene, there is still probable cause later back at the police station (*United States* v. *Johns* (1985) 469 U.S. 478, 484-485 [83 L.Ed.2d 890, 897, 105 S.Ct. 881, 885-886]), so the fact that the purse was not searched until it was brought back to the station is irrelevant. ■ *United States* v. *Johns* requires that there be probable cause to believe that the car contained contraband as opposed to just the container itself; however, this was satisfied by the officers' discovery of the alcoholic drink and the likelihood of drug use. Once the vehicle is found to contain contraband *United States* v. *Johns* finds probable cause to search each and every container in the vehicle without obtaining a warrant. (*Ibid.*)

## II. *Other Justifications for the Warrantless Search of the Purse*

Appellant further argues that the warrantless search of her purse cannot be justified as an inventory search or as a search of the person at the station house. Appellant relies primarily on *United States* v. *Monclavo-Cruz* (9th Cir. 1981) 662 F.2d 1285. In that case the United States Court of Appeals for the Ninth Circuit was faced with a factual situation very similar to appellant's case. *Monclavo-Cruz* was arrested after confessing to being an illegal alien. Her purse was on her lap in the car and it was taken to the police station by the arresting officer and subsequently inventory-searched pursuant to the booking process. The court discussed the applicable rules for warrantless searches and found that none of them applied to that case and therefore suppressed the evidence found in the purse.

In reasoning that the search was not a valid inventory search the court pointed out: (1) that society recognized that Monclavo-Cruz had a reasonable expectation of privacy in her purse; (2) the police officer clearly had an investigatory purpose evidenced by his failure to ask Monclavo-Cruz whether or not she would prefer her purse to be locked intact or inventoried first; (3) the government offered no evidence that its storage facility was not secure; (4) Monclavo-Cruz' purse could have been well protected from theft without searching it; (5) any possibility of a claim against the police over stolen property would be reduced if the purse were not emptied for the inventory; and (6) the police had no reason to believe that weapons or explosives may have been contained in the purse. (*United States* v. *Monclavo-Cruz, supra,* 662 F.2d at p. 1289.)

█ However, subsequent to *Monclavo-Cruz* the United States Supreme Court held in *Illinois* v. *Lafayette* (1983) 462 U.S. 640 [77 L.Ed.2d 65, 103 S.Ct. 2605], that it was not inconsistent with the Fourth Amendment and therefore not unreasonable for police to conduct an inventory search as part of the booking procedure. The court stated, "At the station house, it is entirely proper for police to remove and list or inventory property found on the person or in the possession of an arrested person who is to be jailed." (At p. 646 [77 L.Ed.2d at p. 71].) The court further added that the reasonableness of the governmental activity was not controlled by the existence of alternative " 'less intrusive' " means. (*Id.*, at p. 648 [77 L.Ed.2d at p. 72].) Following *Illinois* v. *Lafayette,* we conclude the search of appellant's purse during the booking procedure was lawful.

Furthermore, we note the conclusion reached in *Monclavo-Cruz* that a purse cannot be searched as a normal extension of the person (*United States* v. *Monclavo-Cruz, supra,* 662 F.2d at p. 1288) is also contrary to well-established California law. "Case law has established that purses (*People* v. *Barnett* (1980) 113 Cal.App.3d 563 []; *People* v. *Harris* [1980] 105 Cal.App.3d 204 [164 Cal.Rptr. 296]), shoulder bags (*People* v. *Flores* [1979] 100 Cal.App.3d 221 [160 Cal.Rptr. 839]) and wallets (even when found under an auto seat) (*People* v. *Bundesen* [1980] 106 Cal.App.3d 508 [165 Cal.Rptr. 174]) are items 'immediately associated with the person of the arrestee' and are searchable without a warrant in a booking or accelerated booking search." (*Miller* v. *Superior Court* (1981) 127 Cal.App.3d 494, 509 [179 Cal.Rptr. 783].)

The court in *People* v. *Barnett, supra,* 113 Cal.App.3d 563, 575-576, considered both the California and the federal law when ruling on whether or not a purse could be searched as part of the booking process. The court found, "Defendant's contention concerning the unreasonableness of the booking search of her purse . . . is untenable. . . . This court (Div. Three) in *People* v. *Bundesen* (1980) 106 Cal.App.3d 508 [], pointed out, at page 515, that booking searches have been repeatedly upheld to maintain jail security, to discover evidence pertaining to the crime charged, and to safeguard the arrestee's personal belongings, and concluded at page 516: 'In order to sustain appellant's contention on appeal this court must hold that *Chadwick* and the California cases which have relied upon *Chadwick* impliedly invalidate booking searches of all closed containers. *Chadwick* requires law enforcement officers to obtain a warrant only if the officers "have reduced luggage or other personal property *not immediately associated with the person of the arrestee* to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, . . ." (*United States* v. *Chadwick* [1976] 433 U.S. 1, 15 . . . italics added.) It can hardly be argued that a wallet is not

closely associated with the person of the arrestee. It therefore appears that *Chadwick* and the California Supreme Court cases which relied upon *Chadwick* (*Dalton* and *Minjares*) have not impliedly overruled booking searches at least to the extent the booking search is of personal property "immediately associated with the person of the arrestee. . . ." (*Chadwick, supra,* at p. 15. . . .)' Here, defendant's purse was personal property immediately connected with defendant and properly searched to disclose evidence of the crime charged."

Appellant's purse was lawfully searched without a warrant because (1) probable cause existed; (2) it was searched as personal property pursuant to an inventory procedure; and (3) it is considered a normal extension of the person so it may be included as a search of the person during the booking process.

Accordingly, the judgment is affirmed.

Channell, J., and Sabraw, J., concurred.