[No. F010482. Fifth Dist. July 17, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM LESLIE TILLERY, Defendant and Appellant.

1570

## COUNSEL

Baker & Houston and Gary A. Houston for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, J. Robert Jibson and Alison Aleman, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**FRANSON, P. J.—**

### STATEMENT OF THE CASE

Appellant was charged with one count of cultivating marijuana (Health & Saf. Code, § 11358), one count of possession of marijuana for sale (Health & Saf. Code, § 11359), one count of battery upon a police officer (Pen. Code, §§ 242, 243, subd. (c)), one count of willfully threatening a witness with force or violence (Pen. Code, § 140, subd. (a)) and one count of constructing or maintaining a building without required building permits in violation of section 4282 of the Kern County Code of Building Regulations.

Appellant filed motions to suppress the evidence (Pen. Code, § 1538.5) and to dismiss the information (Pen. Code, § 995), which were denied. Thereafter, appellant pleaded nolo contendere to one count of cultivating marijuana (Health & Saf. Code, § 11358) and one count of obstructing a peace officer in the discharge of his duties (Pen. Code, § 148). The remaining charges were dismissed.

Imposition of sentence was suspended as to both counts to which appellant had pleaded, and he was placed on probation for a period of three years on the condition he serve nine months in the county jail on the marijuana conviction and pay statutory fines. Appellant appeals both convictions.

We hold the evidence of marijuana cultivation was obtained by means of an illegal entry onto the premises to be inspected. Further, the Fourth Amendment compels exclusion of this evidence; hence, the marijuana cultivation conviction must be reversed.

The conviction of obstructing a police officer in the discharge of his duties is affirmed.

## STATEMENT OF FACTS

Building inspector Murdock visited the property where appellant resided to investigate a complaint that appellant and his family were living in a garage that was not suitable for habitation. Murdock requested entry to inspect the property, but appellant refused to permit an inspection. The property was owned by appellant's relative, Arthur Tillery, who lived next door in a separately fenced area.

After being denied entry, Murdock obtained an inspection warrant from a magistrate pursuant to Code of Civil Procedure section 1822.50 et seq. to inspect the premises for both building and zoning code violations. Because of pit bulls on the property and appellant's reputation for violence, Murdock asked Deputy Sheriffs Cooper and Snead, uniformed officers, to accompany him on the inspection.

When Murdock and the officers arrived at the premises, appellant was climbing into his automobile parked on the street outside a five-foot high chain link fence that surrounded the premises. The fence had a gate that was fastened with a combination lock. The officers told appellant they had a search warrant and requested entry onto the property. Appellant replied that he had to run an errand and that he would return in a few minutes. The officers would not permit appellant to leave. Murdock attempted to hand appellant the warrant, but appellant would not accept it. Appellant said he was not going to let them onto his property. Sergeant Cooper then ordered appellant to get out of the car and open the gate so that an inspection could be made of the premises. Appellant was advised that he would "possibly be subject to arrest should he interfere or hinder" the officers. Appellant said, "go ahead . . . , I've been arrested before."

After some arguing and at the insistence of the officers, appellant finally got out of his car and walked over to the gate and began fumbling with the lock; however, appellant apparently changed his mind because he began climbing the fence and yelled at the officers, "when I get inside, you're not going to get in." The officers pulled appellant down from the fence, and the fight began: appellant struck Officer Snead in the face with his fist. Sergeant Cooper yelled, "that's felony assault on an officer." Appellant next kicked Sergeant Cooper in the shins, and Cooper yelled, "that's another felony assault on an officer." The officers then hit appellant with their batons several times across the shins and in the stomach to subdue him. They finally pinned appellant face down on the ground with Sergeant Cooper on top twisting appellant's arm behind him in a wrist lock. Appellant yelled, "I give, I give." The officers handcuffed appellant and placed him in the rear of the police car strapped in a seat belt so that he could not move. At this

point, according to the officers, they "asked" appellant for the combination to the lock on the gate, and he gave it to them.

During the inspection, a box of drying marijuana was seen in plain view in the occupied garage. Additionally, 10 marijuana plants were found growing in a shed on the property.

## DISCUSSION

I. *Whether the marijuana evidence should have been suppressed on the ground that the inspection warrant was illegally executed.*

A. *Was the search lawful?*

In *Camara* v. *Municipal Court* (1967) 387 U.S. 523 [18 L.Ed.2d 930, 87 S.Ct. 1727], the United States Supreme Court held that in nonemergency situations a nonconsensual administrative inspection of a private residence is subject to the requirements of the Fourth Amendment so that the administrative agency must obtain an inspection warrant from a judge before the premises may be inspected for possible violations. However, unlike criminal search warrants, the probable cause for the issuance of an administrative inspection warrant is a finding of reasonable need, i.e., a finding of reasonable legislative or administrative standards for a periodic or area inspection or a reasonable belief by an inspector that a regulatory violation exists on the particular premises to be inspected. (*Id*. at p. 538 [18 L.Ed.2d at p. 941]; see also *See* v. *City of Seattle* (1967) 387 U.S. 541 [18 L.Ed.2d 943, 87 S.Ct. 1737]; *Marshall* v. *Barlow's, Inc.* (1978) 436 U.S. 307 [56 L.Ed.2d 305, 98 S.Ct. 1816].) Reasonableness is the ultimate standard to be applied in analyzing the legality of regulatory searches under the Fourth Amendment. (*Camara* v. *Municipal Court, supra,* at p. 539 [18 L.Ed.2d at p. 941].)

Code of Civil Procedure section 1822.50 et seq.[1] were enacted to comply with the standards enunciated in *Camara* v. *Municipal Court, supra,* 387 U.S. 523. (*People* v. *Firstenberg* (1979) 92 Cal.App.3d 570, 583 [155 Cal.Rptr. 80].) As part of this statutory framework, section 1822.56 sets forth the specific procedures which must be complied with in executing an inspection warrant. This section provides that "An inspection pursuant to this warrant may not be made between 6:00 p.m. of any day and 8:00 a.m. of the succeeding day, nor in the absence of an owner or occupant of the particular place . . ." to be inspected "unless specifically authorized by the judge upon a showing that such authority is reasonably necessary to effectuate the purpose of the [ordinance] being enforced." The statute also

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise indicated.

provides that an inspection pursuant to a warrant "shall not be made by means of forcible entry, except that the judge may expressly authorize a forcible entry where facts are shown sufficient to create a reasonable suspicion of a violation of a . . . law or regulation relating to building, fire, safety, plumbing, electrical, health, labor, or zoning, which, if such violation existed, would be an immediate threat to health or safety, or where facts are shown establishing that reasonable attempts to serve a previous warrant have been unsuccessful. . . ." The statute concludes with the admonition that "Where prior consent has been sought and refused, notice that a warrant has been issued must be given at least 24 hours before the warrant is executed, unless the judge finds that immediate execution is reasonably necessary . . . ."[2]

Appellant contends the warrant was illegally executed in two respects. ■ First, although the warrant expressly required the presence of the "owner(s) of the premises and/or their authorized representatives," the search was conducted without the owner of the property, Arthur Tillery or his representative, either being notified of the impending search or being present at the time of the search. Second, appellant alleges the deputies forcibly entered the premises in violation of section 1822.56.

Although the warrant required the presence of the owner or his representative during the inspection, the evidence cannot be excluded due to noncompliance with that warrant provision. "[A] court may not exclude evidence under the Fourth Amendment unless it finds that an unlawful search or seizure violated the defendant's own constitutional rights. [Citations.] And the defendant's own Fourth Amendment rights are violated only when the challenged conduct invaded *his* legitimate expectation of privacy rather than that of a third party." (*United States* v. *Payner* (1980) 447 U.S. 727, 731 [65 L.Ed.2d 468, 474, 100 S.Ct. 2439].) This is also the rule in California. (*In re Lance W.* (1985) 37 Cal.3d 873 [210 Cal.Rptr. 631, 694 P.2d 744].)

The absence of the property owner during the inspection had no bearing on appellant's legitimate expectation of privacy. Rather, the presence of the nonoccupant owner would have been a further intrusion. Since the absence of the owner or his authorized representative did not violate appellant's constitutional rights, appellant has no standing to object to the admission of the evidence on this ground.

---

[2] The warrant in the instant case expressly waived the 24-hour notice based on a "good cause" showing in Murdock's affidavit of appellant's "temper" and the presence of the pit bulls on the property. If appellant were given advance notice of the intended inspection, he might unchain the pit bulls thereby endangering Murdock.

■ Appellant next argues that the evidence must be suppressed because the warrant was executed by a forcible entry in violation of the clear prohibition of section 1822.56. Such an entry was not authorized by the judge in the warrant. Appellant contends the deputies forcibly entered onto the premises in that they had no authority to either detain him after they had arrived at the property or to force the lock combination from him through acts of violence. As we shall explain, appellant's contention that the warrant was executed by a forcible entry must be sustained because of the officers' illegal conduct commencing shortly after the outset of their attempted execution of the warrant.

When the deputies arrived at the scene, they observed appellant outside the premises and climbing into his car to run an errand. The deputies prevented appellant from leaving and therefore arguably "seized" appellant within the meaning of the Fourth Amendment. (Cf. *Michigan* v. *Summers* (1981) 452 U.S. 692, 696 [69 L.Ed.2d 340, 345, 101 S.Ct. 2587].) This was a prearrest seizure which at the time was unsupported by probable cause to believe that contraband was on the premises. The seizure also preceded any explicit refusal by appellant to permit the search of the premises. ■ Although generally every seizure having the essential attributes of a formal arrest is unreasonable unless it is supported by probable cause, there is an exception for limited intrusions that may be justified by special law enforcement interests. (*Michigan* v. *Summers, supra,* 452 U.S. at p. 700 [69 L.Ed.2d at p. 348].) Reasonableness for constitutional purposes depends " 'on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.' [Citation.]" (*Pennsylvania* v. *Mimms* (1977) 434 U.S. 106, 109 [54 L.Ed.2d 331, 336, 98 S.Ct. 330].) Detaining appellant momentarily so that he could be served with the warrant and giving him the opportunity to consent to or to refuse the inspection was reasonable and permissible.

■ However, once appellant had explicitly refused to consent to the inspection, the authority to execute the warrant ended. At this point, the officers had no right to force appellant out of his car and back to the gate to open it so the officers could get onto the premises. Under the statutory procedures mandated for administrative inspections, the officers' only alternative once appellant refused to accept the warrant or to otherwise consent to the inspection of the premises was either to allow appellant to go on his way or to arrest him for willful refusal to permit an inspection lawfully authorized by the warrant, a misdemeanor under section 1822.57. The latter option would have justified the officers' placing appellant in the patrol car and taking him to the station for booking on the misdemeanor. To continue the search by any forceful means, however, required another

warrant containing a judge's specific authorization of a forcible entry of the premises.

We recognize that under section 1822.57 the officers had the right to arrest appellant if he willfully refused to permit an inspection under the warrant. Although appellant was advised of this right, it did not deter him. He again refused to permit the inspection.

The rules we are dealing with are not just technical in nature. Rather, they have a substantive and commonsense basis. One of the purposes of the administrative inspection procedures is to avoid violent confrontations between owners and occupants of private residences and the administrative inspectors charged with the responsibility of enforcing the building or other regulatory codes. If the warrant in the present case had explicitly authorized a forcible entry of the premises, appellant might well have allowed the officers to enter peacefully upon being advised of the judge's authorization. Thus, the very thing the statute is designed to prevent, a violent confrontation between the police and the occupier of the premises to be inspected, occurred because the officers failed to follow the statutory procedures.

Respondent's argument that we are bound by the trial court's implied finding that the search was consensual must be rejected. Viewing the totality of the evidence from the time appellant first stated he was not going to let the officers onto the property, to the time the officers obtained the combination and entered the property, we conclude as a matter of law that the officers forced their way onto the property as prohibited by section 1822.56. The officers' initial act of forcing appellant to leave his car and return to the gate in the face of his refusal to consent to the search permeated and tainted the entire sequence of events, including appellant's giving the combination to the officers. Under these circumstances, no rational inference can be drawn that appellant freely and voluntarily consented to the search by surrendering the combination number. Rather, the only rational inference to be drawn is that appellant merely "acquiesc[ed] to a claim of lawful authority." (Cf. *Bumper* v. *North Carolina* (1968) 391 U.S. 543, 549 [20 L.Ed.2d 797, 802-803, 88 S.Ct. 1788].) A contrary inference ignores the coercive reality of all that transpired before appellant surrendered the lock combination to the officers.

■ Unlike a search for criminal evidence, an administrative search for building code or other regulatory violations ordinarily does not entail the exigent circumstances that may confront officers in the search for contraband, i.e., the possible destruction of the evidence, the prospect of the occupant's flight and the risk of harm to the officers carrying out the search. ■ ■ ■ ■ Because of these important distinctions from

criminal search warrants, we cannot uphold the legality of the officers' conduct in the execution of the instant warrant based on exigent circumstances.[3]

**B.** *Should the criminal evidence seized at the premises be excluded because of the illegal execution of the inspection warrant?*

This is a question of first impression.

Article I, section 28, subdivision (d) of the California Constitution, added by Proposition 8, provides in relevant part: "Right to Truth-in-Evidence. Except as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature, *relevant evidence shall not be excluded* in any criminal proceeding, including pretrial and post conviction motions and hearings, . . ." (Italics added.) ■ "What Proposition 8 does is to eliminate a judicially created *remedy* for violations of the search and seizure provisions of the federal or state Constitutions, through the exclusion of evidence so obtained, except to the extent that exclusion remains *federally compelled*." (*In re Lance W., supra,* 37 Cal.3d 873, 886-887, italics added.) Thus, the evidence here should not be excluded unless exclusion is required by the Fourth Amendment.

■ "The Fourth Amendment commands that searches and seizures be reasonable. What is reasonable depends upon all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." (*United States* v. *Montoya de Hernandez* (1985) 473 U.S. 531, 537 [87 L.Ed.2d 381, 388, 105 S.Ct. 3304].) Determining the standard of reasonableness applicable to a particular class of searches requires " 'balanc[ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.' " (*O'Connor* v. *Ortega* (1987) 480 U.S. 709, 719 [94 L.Ed.2d 714, 724, 107 S.Ct. 1492].)

■ The exclusionary rule is a judicially created remedy designed to safeguard Fourth Amendment rights through its deterrent effect. (Cf. *United States* v. *Leon* (1984) 468 U. S. 897, 906 [82 L.Ed.2d 677, 687, 104 S.Ct. 3405].) The rule mandates that evidence obtained by an unreasonable search and seizure in violation of the Fourth Amendment shall be excluded

---

[3] Respondent contends that exigent circumstances justified the entry based on the fact that appellant yelled to someone "hide the stuff" while attempting to climb the fence. The prosecution did not raise this issue in the trial court, and thus, respondent is precluded from raising it on appeal. (*Rodriguez* v. *Superior Court* (1988) 199 Cal.App.3d 1453, 1461 [245 Cal.Rptr. 617].)

on proper objection, with certain limited exceptions not applicable here. (*Id.* at pp. 923-924 [82 L.Ed.2d at p. 699].)

■ The rule of inadmissibility applies to criminal cases and generally not to civil proceedings. (Cf. *United States* v. *Janis* (1976) 428 U.S. 433, 454 [49 L.Ed.2d 1046, 1060-1061, 96 S.Ct. 3021].) However, where the proceeding is "quasi-criminal" in nature, i.e., it involves penalties or forfeitures, the exclusionary rule will be applied. (See Witkin, Cal. Criminal Procedure (1985 supp. pt. 2) § 841, p. 25.)

The present case, of course, is criminal in nature. The unique twist is that the evidence upon which appellant was convicted was obtained through the unlawful execution of an administrative inspection warrant issued upon reasonable cause to believe that the owner of the premises occupied by appellant was in violation of the building codes. Nevertheless, the applicability of the exclusionary rule to evidence unlawfully seized pursuant to a warrant should not depend upon an after-the-fact determination of the nature of the evidence seized, i.e., contraband or regulatory code violation evidence. As explained in *Camara* v. *Municipal Court, supra,* 387 U.S. 523, most fire, health and housing codes are enforced by criminal processes, and even where discovery of a violation by an inspector produces only an administrative compliance order, refusal to comply is a criminal offense.

■ As explained above, the use of force in executing the inspection warrant violated section 1822.56. Nevertheless, a statutory violation does not necessarily require suppression of evidence. Although the purpose of the statutory requirements for service of warrants is the implementation of the Fourth Amendment, the particular procedures the statute mandates are not necessarily part of the Fourth Amendment. (*United States* v. *Searp* (6th Cir. 1978) 586 F.2d 1117, 1121.) Where, despite statutory violations, the search is "reasonable" in the constitutional sense, exclusion of the evidence is not warranted. (*Id.* at p. 1122.) As noted by the *Searp* court, it is important to differentiate between the *right* to personal security free from unnecessary intrusions by the state and the *procedures* which have been established to protect that right. (*Ibid.*)

Although the effect of a violation of section 1822.56 has not been ruled on, the courts have been faced with violations of other statutes established to implement the Fourth Amendment. For example, in *Rodriguez* v. *Superior Court, supra,* 199 Cal.App.3d 1453, we held that exclusion of the evidence was not required where a magistrate's nighttime authorization for execution of a criminal search warrant was not based on good cause as required by Penal Code section 1533 and the officer's reliance on the authorization was not in good faith. Since the warrant was otherwise reasonably

executed, exclusion of the evidence was not compelled under the Fourth Amendment and federal law. Similarly, it has been held that violations of the statutory "knock-notice" requirements contained in Penal Code sections 844 and 1531 do not necessarily render an entry "unreasonable" within the meaning of the Fourth Amendment. (*People* v. *Tacy* (1987) 195 Cal.App.3d 1402, 1415-1416 [241 Cal.Rptr. 400].) If, in the particular circumstances of the case, the underlying policies of the statutes are not frustrated by the officer's conduct, exclusion of the evidence is not required. (*Id.* at pp. 1416-1418.)

■ An administrative inspection may be made by a forcible entry only where a judge has expressly authorized such an entry upon a showing of either the existence of exigent circumstances or that reasonable attempts to serve a previous warrant have been unsuccessful. (§ 1822.56.) As discussed in part I, subdivision A above, one of the purposes of this procedure is to avoid violent confrontations between owners and/or occupants of private residences and the administrative inspectors. After noting that if the warrant had authorized a forcible entry appellant might have allowed the officers to enter peacefully, we concluded that because the officers failed to follow the statutory procedures, the violent confrontation occurred. Thus, one of the underlying policies of the statute was frustrated by the officers' conduct. Under these circumstances, the search was not reasonable within the meaning of the Fourth Amendment. The government's interest in conducting the administrative search did not justify the forceful and coercive nature of the intrusion. Thus, the evidence must be excluded.

II. *Whether the battery on a police officer charge should have been dismissed on the ground that the battery occurred when the sheriff's deputies were not lawfully engaged in the performance of their duties.*

■ Appellant contends his Penal Code section 995 motion to dismiss the felony battery upon a police officer charge should have been granted on the ground that in initially detaining appellant the deputies were not lawfully engaged in the performance of their duties. This motion sought to establish a defense to the battery, not to suppress evidence based on an unlawful search and seizure.

A nolo contendere or guilty plea precludes review of a denial of a Penal Code section 995 motion unless the motion sought to suppress evidence based on an unlawful search and seizure. (*People* v. *Woodford* (1986) 176 Cal.App.3d 944, 947-948 [222 Cal.Rptr. 475]; *People* v. *Hughes* (1980) 112 Cal.App.3d 452, 460 [169 Cal.Rptr. 364].) Thus, the denial of this motion is not cognizable on appeal.

The judgment of conviction of cultivating marijuana is reversed. The judgment of conviction of obstructing a peace officer in the discharge of his duties is affirmed.

Martin, J., and Ardaiz, J., concurred.