[No. B055247. Second Dist., Div. Six. June 23, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
LORENZO CASTILLO, Defendant and Appellant.

**COUNSEL**

Lauri K. Brown for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Acting Assistant Attorney General, Donald E. de Nicola, and David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**YEGAN, J.**—Lorenzo Castillo was convicted by plea of possessing cocaine. (Health & Saf. Code, § 11350, subd. (a).) Prior thereto he unsuccessfully moved to suppress evidence pursuant to Penal Code section 1538.5. Probation was granted on certain terms and conditions including the service of 180 days in county jail. He appeals contending that the suppression motion was improperly denied. We disagee, affirm, and vacate the stay order of jail time.

We view the evidence in the light most favorable to the order denying suppression which is required by the familiar rule governing appellate review. (*People* v. *Price* (1991) 1 Cal.4th 324, 409 [3 Cal.Rptr.2d 106, 821 P.2d 610]; *People* v. *Renteria* (1992) 2 Cal.App.4th 440, 442 [2 Cal.Rptr.2d 925].) Oxnard Police Officer Robert Camarillo, who had done

approximately a dozen "bar checks" at the Terraza Casino Bar in Oxnard in the past, went there on December 6, 1989, to do another "bar check." At the hearing on the suppression motion, Camarillo twice expressly said he went to the Terraza Casino to do a "bar check" which he described as ". . . showing police presence. . . . We're looking for minors drinking, any other violation of the Business and Professions Code." He had been directed to do so by a superior on this later occasion because there was reason to believe that the Terraza Casino did not have an entertainment or dance permit.

Camarillo contacted appellant, the owner of the Terraza Casino whom he knew from prior "bar checks," and asked to see the entertainment or dance permit. Appellant said that it might be in the back office which was also used for liquor storage. Appellant went to look for the permit. Camarillo followed him, opened the office door notwithstanding appellant's attempt to close it, and saw appellant appear to give something to another man. Camarillo then saw narcotics paraphernalia in plain sight in the office, arrested appellant therefor, and discovered cocaine on his person at a subsequent booking search.

In denying the suppression motion, the trial court said: "I'm prepared to make the finding as a matter of law that when you are in the business of selling alcohol, you're fair game and nothing is sacred on the premises. . . . [¶] I don't think you have a reasonable expectation of privacy in an office in an establishment that sells alcohol from the alcoholic beverage and control department [or] from peace officers. . . . [¶] Well I'm prepared to make this finding, that one doesn't—one is not confined to a particular act when one is in the bar on a bar check. I don't think you can find [sic, confine] to the hat of an ABC person and I don't think you can find [sic, confine] to the hat of a policeman enforcing dance permits. I think you come in at all times wearing all of the hats that the law charges you with wearing. . . . [¶] I think the law in California is clear that if you are lawfully on the premises, it matters not that you might be there for the wrong reason. . . . [I]f you're lawfully there and you make a seizure of something in plain view . . . [y]ou don't have a warrant and your discovery doesn't have to be inadvertent. . . . [¶] So if he's an officer lawfully acting as an agent of the Alcohol Beverage Control Board in my view it doesn't matter how he got there provided that he has the authority to be in that office, and I think that's where this case is, and that's why I get back to the point that this case turns upon the point of the permissible inspection and whether there is any part of a business establishment that sells alcohol that's immune from inspection. . . ."

The trial court determined that *People* v. *Paulson* (1990) 216 Cal.App.3d 1480 [265 Cal.Rptr. 579] provided controlling authority and

denied the motion to suppress.[1] Substantial evidence supports the trial court's express and implied factual determinations. Using our independent judgment, we conclude that the trial court's legal determination was correct. (*People* v. *Price*, *supra*, 1 Cal.4th at p. 409.)

The dissent contends that Camarillo's sole purpose in going to the bar and its office was to verify compliance with a local ordinance requiring a dance permit. Even if this were true, the suppression motion was still properly denied. The trial court found Camarillo was wearing two hats at the bar. Camarillo's "bar check" hat allowed him to be in the office.

As we recently indicated in *People* v. *Renteria*, *supra*, 2 Cal.App.4th at page 444: "Police officers are not supposed to wear 'horse blinders.' " Wherever a police officer is, he or she is supposed to keep his or her eyes open for all violations of all laws. It was not unlawful for Camarillo to follow appellant to the office where the plain sight observation was made. When Camarillo's superior told him to do a "bar check" to see if there was a dance permit, the superior did not, ipso facto, put "horse blinders" on Camarillo. The dissent theory, carried to its logical end, puts those "horse blinders" on Camarillo's eyes rendering him a mere municipal code enforcement officer without power to follow appellant to the office.

Here, the suppression motion was properly denied because Camarillo could have lawfully followed appellant to do a "bar check." "[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." (*Scott* v. *United States* (1978) 436 U.S. 128, 138; [56 L.Ed.2d 168, 178, 98 S.Ct. 1717]; see also *People* v. *Boissard* (1992) 5 Cal.App.4th 972, 980, 984; *People* v. *Loudermilk* (1987) 195 Cal.App.3d 996, 1005 [241 Cal.Rptr. 208]; *People* v. *Decker* (1986) 176 Cal.App.3d 1247, 1250 [222 Cal.Rptr. 689]; *People* v. *Le* (1985) 169 Cal.App.3d 186, 193-195 [215 Cal.Rptr. 106].) This principle dictates that we affirm the trial court's order denying suppression. Given the factual determination that Camarillo was wearing two hats, one of which was his "bar check" hat, the rules which allow for an administrative search (see e.g., Bus. & Prof. Code, § 25755, subd. (b); *People* v. *Paulson*, *supra*, 216 Cal.App.3d 1408) made it

---

[1]There is no reason for us to reexamine the legal analysis of administrative search rules. Presiding Justice Kline's opinion in *People* v. *Paulson*, *supra*, succinctly and correctly sets forth the salient rules with which we are in accord. (See *id.*, at pp. 1487-1489.) It provides a complete answer to the dissent's analysis of the administrative search issues.

objectively reasonable for him to be at any location in the bar, including the office/storage room.[2]

Prior to the passage of Proposition 8, our California Supreme Court articulated the "subjective-objective" rule for determining whether a police officer's discovery of evidence could pass constitutional muster. For example, in the arrest context the court said: "Probable cause to arrest without a warrant represents an *objective* legal standard by which to measure the reasonableness and sufficiency of the officer's *subjective* beliefs that the defendant has committed an offense. [Citations.] '[*U*]*nless* it is first established that the police officer *believed* that the crime . . . had been committed by the [defendant], the issue of probable cause does not arise, for it would be a logical absurdity for the courts to be asked to determine the reasonableness of an officer's belief that [the] particular crime had been committed unless it were first established that the officer did entertain such a belief.' [Citation]." (*People* v. *Miller* (1972) 7 Cal.3d 219, 226 [101 Cal.Rptr. 860, 496 P.2d 1228].)

Proposition 8 eliminated the ". . . judicially created *remedy* for violations of the search and seizure provisions of the federal or state Constitutions, through the exclusion of evidence so obtained, except to the extent that exclusion remains federally compelled." (*In re Lance W.* (1985) 37 Cal.3d 873, 886-887 [210 Cal.Rptr. 631, 694 P.2d 744].) There is no "subjective-objective" rule in federal jurisprudence. (*Scott* v. *United States, supra,* 436 U.S. 128 [56 L.Ed.2d 168]; compare *Brown* v. *Texas* (1979) 443 U.S. 47, 51 [61 L.Ed.2d 357, 362, 99 S.Ct. 2637] [To justify a detention, ". . . we have required the officers to have a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity. . . ."].) Camarillo's subjective thought process is not controlling pursuant to federal law as long as his actions were objectively reasonable. The suppression motion was properly denied.

The judgment (order granting probation) is affirmed. The stay order previously granted by the trial court is vacated.

Gilbert, J., concurred.

[2]Business and Professions Code section 25755, subdivision (b), in pertinent part, provides: "[P]eace officers listed in Section 830.1 of the Penal Code, and those officers listed in 830.6 of the Penal Code while acting in the course and scope of their employment as peace officers may, in enforcing the provisions of this division, visit and inspect the premises of any licensee at any time during which the licensee is exercising the privileges authorized by his or her license on the premises."

**STONE (S. J.), P. J.**—I dissent.

The majority formulates a rule of law essentially comprising a pronouncement that there are no Fourth Amendment prohibitions applying to administrative searches of closely regulated businesses. Federal law holds to the contrary.

I first disagree with the majority's conclusion that the trial court's factual finding, that Officer Camarillo entered appellant's inner office wearing both his bar check hat and his municipal ordinance inspector hat, is supported by substantial evidence. It was undisputed from the testimony at the hearing on the suppression motion that Camarillo went to appellant's bar at the request of a superior to check for a dance permit. The only request the officer made to appellant upon entering his bar was to produce his dance permit. Camarillo followed appellant down the hall to his office after appellant said he would look for his dance permit documentation there. Before this, appellant had showed the officer all of his business licenses except the requested permit. Indeed, the trial court made the additional finding that Camarillo entered appellant's office without consent, without a warrant, and without probable cause that appellant had violated any law.

Although making much of its point that Officer Camarillo's subjective motivations in entering appellant's bar and office are irrelevant under federal law (a proposition with which I agree), the majority in fact relies on the officer's subjective comments that he went into appellant's bar to do a "bar check" to support its conclusion of substantial evidence. The record is unrefuted that the only "objective" reason Officer Camarillo had to go into appellant's inner office was in wearing his municipal ordinance inspector hat.

I further disagree with the majority that the officer's search of appellant's office was constitutionally reasonable. In response to whether federal law authorizes the search in this case, the majority merely concludes that the trial court's finding that Camarillo was wearing two hats allowed him to go into appellant's office.

The reasonableness of a warrantless search depends on the specific enforcement needs and privacy guaranties at issue in any case. (*People* v. *Paulson* (1990) 216 Cal.App.3d 1480, 1486 [265 Cal.Rptr. 579], citing *Marshall* v. *Barlow's Inc.* (1978) 436 U.S. 307, 321 [56 L.Ed.2d 305, 316-317, 98 S.Ct. 1816].) It is important to keep in mind in the present case that administrative searches are not criminal searches. The majority here appears to blur the lines between the two. Although administrative laws

generally impose criminal sanctions for refusal to comply (*People* v. *Tillery* (1989) 211 Cal.App.3d 1569, 1580 [260 Cal.Rptr. 320]), an administrative statute is not a penal law. A penal statute emphasizes the punishment of individuals for specific acts of behavior. An administrative law has an entirely different method of remedying a social problem by establishing how particular businesses should be operated and allowing government officials to ensure those rules are followed. (*People* v. *Paulson, supra*, 216 Cal.App.3d 1486, citing *New York* v. *Burger* (1987) 482 U.S. 691, 712-713 [96 L.Ed.2d 601, 619-621, 107 S.Ct. 2636].)

The trial court's legal conclusion was correct to one extent. It is true under federal law that, since appellant was operating a closely regulated business, any part of his premises, including his private office, was open to a warrantless inspection for the purposes specified by the Alcoholic Beverage Act. (*Colonnade Catering Corp.* v. *United States* (1970) 397 U.S. 72, 76 [25 L.Ed.2d 60, 64, 90 S.Ct. 774]; *Terry York Imports, Inc.* v. *Department of Motor Vehicles* (1987) 197 Cal.App.3d 307, 319-320 [242 Cal.Rptr. 790].) In general, the legality of administrative inspections does not depend on consent or warrant, but on the authority of the statute under which the inspection is conducted. (*United States* v. *Biswell* (1972) 406 U.S. 311, 314-315 [32 L.Ed.2d 87, 91-92, 92 S.Ct. 1593].)

However, federal law has not done away with Fourth Amendment prohibitions in the area of pervasively regulated businesses. It is *not* true that the owner of a business in a closely regulated industry has no expectation of privacy, as the majority opinion appears to conclude. The Supreme Court terms it a "reduced" (not "nonexistent") expectation of privacy which "lessens" (not "eliminates) application of the warrant requirement in order to fulfill the Fourth Amendment's standard of reasonableness for a government search. (*New York* v. *Burger, supra*, 482 U.S. 702 [96 L.Ed.2d 613-614].) Even in the context of a pervasively regulated business, a warrantless inspection will be deemed constitutionally reasonable only so long as the following three criteria are met: (1) there must be a substantial government interest underlying the regulatory scheme pursuant to which the inspection is made; (2) the warrantless inspection must be necessary to further the regulatory scheme; and (3) the scheme's inspection program, in terms of the certainty and regularity of its application, must provide a constitutionally adequate substitute for a warrant. (*Id.*, pp. 702-703 [96 L.Ed.2d 613-615].)

In this case, the majority does not even cite *New York* v. *Burger*, which establishes Fourth Amendment limitations on searches of pervasively regulated businesses. The only authority on which the People rely to justify Officer Camarillo's warrantless entry into appellant's inner office is Business

and Professions Code sections 25753 and 25755, part of the Alcoholic Beverage Act. Respondent failed to give this court any information regarding the subject entertainment or dance permit law. In fact, it was unknown until oral argument in this case whether the law was a municipal, county, or state directive. The requirement to obtain an entertainment or dance permit is now known to be part of a city administrative scheme regulating fire and other safety and welfare concerns.

Business and Professions Code sections 25753 and 25755 reveal that Officer Camarillo was authorized to inspect without a warrant during business hours any part of the premises of a local commercial establishment licensed under the Alcoholic Beverage Act in order to enforce any provision of the act and any "penal law." The People have not provided this court with any statutory language authorizing a California law enforcement officer to conduct a warrantless inspection of a commercial premises selling liquor in order to determine the owner's adherence to local fire safety laws.

No one can argue that the State of California or the City of Oxnard did not have substantial government regulation interests in this case. (*Burger* criteria No. 1.) However, I fail to see where *Burger* criteria Nos. 2 and 3 have been met. The record indicates the opposite. Officer Camarillo conducted a warrantless search for the dance permit which was not a purpose under the Alcoholic Beverage Act. (*Burger* criteria No. 2.) The act did not inform appellant that his commercial premises would be subject to warrantless inspections for local administrative law compliance, therefore, it did not perform as a substitute for a warrant by carefully restricting the "scope" of inspections. (*New York* v. *Burger, supra*, 482 U.S. 703 [96 L.Ed.2d 614-615].)

The two California appellate court cases which deal with warrantless administrative searches of businesses dispensing liquor are consistent with *Burger*. *People* v. *Lisner* (1967) 249 Cal.App.2d 637 [57 Cal.Rptr. 674] held that agents of the California Department of Alcoholic Beverage Control and local police had the power to inspect for suspected violations of California's penal statutes. *People* v. *Paulson, supra*, 216 Cal.App.3d 1480, rejected defendant's claim that the warrantless search of his bar solely to find evidence of a narcotics violation exceeded the scope of administrative searches under Business and Professions Code sections 25753 and 25755. The *Paulson* court relied on Business and Professions Code section 24200.5, mandating the revocation of a liquor license if the licensee permits the sale of illegal substances on the licensed premises, to uphold the search. It reasoned that the statute provided a constitutionally adequate substitute for a warrant by explicitly informing the licensee that his premises could be inspected anytime during business hours for sales of drugs.

Here, unlike *Lisner* or *Paulson*, there is no explicit statutory authority giving Officer Camarillo the right to conduct a warrantless inspection of appellant's business for a suspected violation of a municipal administrative law. Simply put, Business and Professions Code sections 25753 and 25755 do not give law enforcement carte blanche authority to inspect businesses selling alcohol for *any* violation of *any* law.

As the appellate court in *Paulson* concluded: "[T]his is not a case in which, as a condition of doing business, the state has required a blanket submission to warrantless searches at any time or *for any purpose*." (216 Cal.App.3d 1490, italics added.) Consistent with this conclusion, I have found no case authority permitting a warrantless administrative search where the inspector's actions were not wholly consistent with the specific statutory purposes under which the inspection was made. As the Supreme Court has made clear, the right to inspect even closely regulated businesses without a warrant must be accompanied by procedures which carefully restrict the government's actions. (*New York* v. *Burger, supra*, 482 U.S. 703; *Colonnade Catering Corp.* v. *United States, supra*, 397 U.S. 77 [25 L.Ed.2d 64-65].)

I believe Officer Camarillo's actions objectively violated Fourth Amendment standards enunciated in *New York* v. *Burger*. The order denying appellant's suppression motion should be reversed.

A petition for a rehearing was denied July 14, 1992. Stone, J., was of the opinion that the petition should be granted. Appellant's petition for review by the Supreme Court was denied September 23, 1992.