Filed 6/30/25  In re Nathaniel N. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| In re NATHANIEL N., a Person Coming Under the Juvenile Court Law. | B342506 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 20CCJP05792B) |
| Plaintiff and Respondent, | |
| v. | |
| D.B., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Marguerite D. Downing, Judge.  Affirmed.

Ernesto Paz Rey, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Sarah Vesecky, Senior Deputy County Counsel, for Plaintiff and Respondent.

_____

Mother, D.B., appeals from an order terminating her parental rights over her son, Nathaniel (born 2019), under Welfare and Institutions Code section 366.26.[1]  Mother contends the juvenile court erred in finding she did not establish the parental benefit exception to adoption.  We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

**A.    Detention, Jurisdiction, and Disposition**

In September 2020, the Los Angeles County Department of Children and Family Services (DCFS) received a referral alleging mother was hospitalized, tested positive for methamphetamine, and admitted using other drugs.  Mother had three children but did not want to disclose their names.[2]

Mother told a social worker "she had been clean and sober for seven years prior to relapsing at the end of August."  She said her "drug of choice" was methamphetamine.  DCFS filed a section 300 petition alleging Nathaniel was at risk due to

_____

[1]    All further statutory references are to the Welfare and Institutions Code.

[2]    Nathaniel has two half-siblings:  M.B. and G.B.  M.B. lived with her father, B.H., who had full custody of her.  G.B. reunified with her father, M.I., during the underlying proceedings.  Neither Nathaniel's siblings nor his father, S.N., are parties to this appeal.  We focus on the facts relevant to the issue raised by mother.

2

mother's methamphetamine use.  Less than two months later, DCFS filed a first amended section 300 petition adding allegations that mother and Nathaniel's father, S.N. (father), had a history of violent altercations and that father was a current methamphetamine user.  The juvenile court detained Nathaniel from the parents and ordered monitored visitation for them.  Nathaniel was placed with maternal great uncle J.V. and his husband, E.A.

At the jurisdiction and disposition hearing in February 2021, the juvenile court sustained the first amended petition as amended by interlineation.  The court removed Nathaniel from the parents' care and ordered family reunification services for them.  The court further ordered the parents to have a minimum of three monitored visits a week for three hours each.

## B. Reunification Period

Caregivers J.V. and E.A. reported mother initially visited Nathaniel two to three times a week for a few hours.  However, the caregivers stated that, after a month or two, mother's visits and contact with Nathaniel became inconsistent, and at times, she would go a full week without calling or visiting.  A concurrent planning assessment completed by DCFS in September 2021 reflected mother had 10 "[v]isits/[c]ontact" in the preceding six months.  The caregivers believed mother's inconsistent visitation confused Nathaniel and caused him to act out after visits.  At the six-month review hearing in October 2021, the juvenile court found the parents had not consistently and regularly visited or made significant progress in resolving the case issues but continued reunification services.

3

In February 2022, DCFS reported mother was visiting Nathaniel every Saturday or Sunday. Mother was also scheduled to have visits at DCFS's office on Mondays, but they were cancelled because mother failed to attend them. At the 12-month review hearing in April 2022, the juvenile court found mother had not made substantial progress in resolving the case issues and terminated her reunification services.

## C. Post-Reunification Period

In August 2022, mother was reportedly visiting Nathaniel weekly on Sundays, with Nathaniel's paternal grandmother monitoring visits. Because of issues with paternal grandmother's monitoring, including her absence due to a vacation, mother was asked to obtain another monitor. She did not identify a monitor or reach out to monitoring services. In a status review report filed in October 2022, DCFS stated mother stopped visiting at the end of August.

In December 2022, father filed a section 388 petition seeking to set aside the jurisdictional findings against him due to lack of proper notice, which the juvenile court granted. The court set the matter for a jurisdiction and disposition hearing as to father. The court sustained the first amended petition as pled, removed Nathaniel from father, and ordered reunification services for him. Caregiver J.V. passed away in late 2022, and caregiver E.A. told the social worker he wished to continue caring for Nathaniel through adoption.

Mother was arrested three times between November 2022 and May 2023. Mother was convicted of a felony in June 2023 and was residing in an in-patient drug treatment program. Prior to being incarcerated in November 2022, DCFS reported mother's

4

visits were "sporadic." After her incarceration, DCFS said she "only had a few visits."

In December 2023, a social worker reached out to mother about having visits in the DCFS office, but mother did not follow up about them. In March 2024, a social worker saw Nathaniel and father on a visit at a fast food restaurant and was surprised to find mother and her boyfriend present without authorization. The next business day, the social worker called mother to talk about visitation, but mother did not respond. In an April 2024 status review report, DCFS stated mother was no longer having scheduled visits with Nathaniel.

In September 2024, a dependency investigator interviewed mother regarding visitation. Mother acknowledged she did not consistently visit Nathaniel throughout the case. While she cited the caregivers and transportation issues as reasons for missing visits, DCFS noted mother also historically missed visits with her other children, G.B. and M.B.

The following month, DCFS reported mother was visiting Nathaniel once a week in its office. In November 2024, DCFS reported mother was continuing to visit Nathaniel at its office whenever she "secures transportation," but the visits were not consistent. Also in November 2024, mother filed a section 388 petition seeking to have reunification services reinstated. In the petition, which was denied, mother stated that although her "visits have been sporadic during the life of the case," her visits had "been more consistent over the 3 months [*sic*]."

## D.    Termination of Parental Rights

At the section 366.26 hearing, mother argued the parental benefit exception to adoption applied. The juvenile court,

however, terminated parental rights and determined no exception applied.  The court found, "[Mother's] visitation has been consistent for the last five months, but previously in the four years this case has been before the court, her visitation has not been consistent."  The court also found it would not be detrimental to Nathaniel to terminate parental rights.  Mother appealed.

## DISCUSSION

### A.    Legal Principles and Standard of Review

The goal at the section 366.26 hearing is "'specifically . . . to select and implement a permanent plan for the child.'"  (*In re Caden C.* (2021) 11 Cal.5th 614, 630 (*Caden C.*).)  After reunification services are terminated, adoption is the Legislature's preferred permanent plan.  (*In re Andrew M.* (2024) 102 Cal.App.5th 803, 814.)  Accordingly, at a section 366.26 hearing, the court must select adoption as the permanent plan and terminate parental rights unless it finds doing so would be detrimental to the child under a specified statutory exception.  (§ 366.26, subd. (c)(1); *Caden C.*, at p. 625.)

One of these exceptions is the parental benefit exception, which applies where "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship."  (§ 366.26, subd. (c)(1)(B)(i).)  A parent must prove three elements to establish the exception applies: "(1) regular *visitation and contact*, and (2) a *relationship*, the continuation of which would *benefit* the child such that (3) the termination of parental rights would be *detrimental* to the child."  (*Caden C.*, *supra*, 11 Cal.5th at p. 631.)  "The burden is on the parent asserting the parental [benefit] exception to produce

6

evidence establishing that exception." (*In re A.G.* (2020) 58 Cal.App.5th 973, 996.)

In this case, the first prong of *Caden C.* is dispositive. This prong is "straightforward," involving an assessment of "whether 'parents visit consistently,' taking into account 'the extent permitted by court orders.'" (*Caden C.*, *supra*, 11 Cal.5th at p. 632.)

A substantial evidence standard of review applies to the first prong. (*Caden C.*, *supra*, 11 Cal.5th at pp. 639–640.) We review the record in the light most favorable to the court's determinations and draw all reasonable inferences from the evidence to support the court's findings and orders. (*In re A.P.* (2024) 103 Cal.App.5th 1137, 1142 (*A.P.*).) Furthermore, where, as here, the trier of fact has expressly or implicitly concluded the party with the burden of proof did not carry the burden and that party appeals, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. (*Ibid.*) Specifically, we ask whether the appellant's evidence was (1) uncontradicted and unimpeached and (2) of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding. (*Ibid.*)

## B.     Mother Does Not Carry Her Burden on Appeal

Mother forfeited any challenge to the juvenile court's finding that she did not satisfy the first *Caden C.* prong. It is a "fundamental rule of appellate review" that the order or judgment appealed from is presumed correct, and all intendments and presumptions are indulged in favor of its correctness. (*Benach v. County of Los Angeles* (2007) 149

7

Cal.App.4th 836, 852 (*Benach*).)  The burden to affirmatively demonstrate error is on the appellant.  (*Fundamental Investment etc. Realty Fund v. Gradow* (1994) 28 Cal.App.4th 966, 971.)  "It is not our place to construct theories or arguments to undermine the judgment and defeat the presumption of correctness." (*Benach*, at p. 852.)

Concerning the first *Caden C.* prong, mother merely points out that her counsel in the juvenile court argued she consistently visited in the six months before the section 366.26 hearing. "Statements and arguments by counsel are not evidence." (*Gdowski v. Gdowski* (2009) 175 Cal.App.4th 128, 139.) Moreover, mother fails to provide any analysis, legal authority, or citation to the record to suggest the court's finding was erroneous.  (*People v. Clayburg* (2012) 211 Cal.App.4th 86, 93 [failure to present "reasoned argument and analysis" forfeits issue on appeal]; *Benach*, *supra*, 149 Cal.App.4th at p. 852 ["An appellant must provide an argument and legal authority to support his contentions.  This burden requires more than a mere assertion that the judgment is wrong"].)

Mother, in her reply, contends she did not forfeit the issue because she asserted in the introduction to her opening brief that she "met her burden of establishing the 'beneficial parent-child relationship.'"  "When points are perfunctorily raised without adequate analysis and authority, we may treat them as abandoned or forfeited."  (*City of Palo Alto v. Public Employment Relations Board* (2016) 5 Cal.App.5th 1271, 1302; see *Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 684 [reviewing courts are "not required to develop the parties' arguments or search the record for supporting evidence"].)

Even if we consider mother's argument on the merits, substantial evidence supports the juvenile court's finding that mother failed to meet the first *Caden C.* prong. At the disposition hearing in February 2021, the juvenile court ordered monitored visitation for mother for a minimum of three visits per week for three hours each. While mother initially visited two to three times a week, Nathaniel's caregivers reported that after a month or two, mother's visits became inconsistent. In September 2021, DCFS indicated mother had only 10 "[v]isits/[c]ontact" with Nathaniel the six months prior. Additionally, the caregivers reported mother's inconsistent visits "'confused'" Nathaniel and caused him to act out.

Throughout the more than four years the case was pending, the caregivers and DCFS reported mother's visits and contact remained inconsistent. She does not dispute that evidence. Rather, mother, in the section 388 petition filed in November 2024, acknowledged her visits had "been sporadic during the life of the case." (*In re Eli B.* (2022) 73 Cal.App.5th 1061, 1070–1071 [father failed to show regular visitation where his visitation "throughout the years-long dependency proceeding was sporadic and also entailed significant gaps"].)

Mother fails to point to any uncontradicted and unimpeached evidence in the record that compels a finding in her favor as a matter of law. (*A.P.*, *supra*, 103 Cal.App.5th at p. 1142.) Substantial evidence supports the juvenile court's finding that mother did not maintain regular visitation and contact. As mother does not demonstrate the juvenile court erred in finding she did not satisfy the first *Caden C.* prong, we do not reach her arguments concerning the other prongs. (*In re Katherine J.* (2022) 75 Cal.App.5th 303, 322. fn. 10 ["a parent

9

must prove *all three* components of the beneficial relationship exception.  A failure of proof on any one of them is fatal"].)

## DISPOSITION

The juvenile court's order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                            MORI, J.

We concur:



ZUKIN, P. J.



GARCIA UHRIG, J. **

**      Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to Article VI, section 6, of the California Constitution.