[No. G007492. Fourth Dist., Div. Three. Dec. 20, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
VICTOR DURON GONZALES, Defendant and Appellant.

COUNSEL

Ronald Y. Butler, Public Defender, Carl C. Holmes, Thomas Havlena and Stephen J. Biskar, Deputy Public Defenders, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, and Steven H. Zeigan, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

CROSBY, J.—Victor Duron Gonzales pleaded guilty to one count of possession of heroin after his motion to suppress was denied. Notwithstanding the arresting officer's own misgivings, viewed objectively and considering the totality of the circumstances, we believe there was adequate probable cause to arrest and affirm accordingly.

I

This is the latest in a seemingly endless line of cases springing from drug enforcement activity in the Buena Clinton area of Garden Grove. Sergeant

Kevin Raney was assigned to a special drug unit "try[ing] to lower the crime rate in Buena Clinton." In the first several weeks of July 1988, Raney encountered Gonzales on several occasions. Defendant admitted he was into drug use, and the officer saw "a growing number of injection wounds on both of the inner portions of his forearms." Raney warned Gonzales that the "[Buena-Clinton] area h[eld] nothing for [him and would only get him] into trouble."

On July 23, 1988, the officer saw defendant in a carport and noted his physical appearance had deteriorated from the previous week. Gonzales looked towards Raney's vehicle and moved his hand down to his right front pants pocket. Raney approached defendant and asked him what he was doing. Gonzales, who was carrying a bundle of clothes, replied he was searching for a relative's stolen bicycle. He again moved his hand toward the pocket. Raney saw one-half inch of a "cylindrical rolled up" clear plastic baggy protruding from that location.

Raney's training and experience in the identification and packaging of controlled substances was considerable. He had seen over 1,300 cellophane bindles containing cocaine or heroin, including 10 occasions where only the top portion protruded. The portion visible in Gonzales' pocket "was identical to the other bindles that [he] had seen in his career." Raney thought the packet in defendant's pocket contained a controlled substance, and he removed it. A white powder, which he believed to be cocaine, was inside. The officer reached into the pocket a second time and discovered another plastic wrapped package. This one appeared to contain heroin. A hypodermic needle fell out of the bundle of clothing Gonzales carried.

Raney testified at the preliminary hearing[1] that he did not believe there was probable cause to arrest defendant before removing the first bindle from his pocket. At the suppression hearing he changed his testimony, there claiming he "theoretically, quite possibly" had probable cause before plucking the baggy from defendant's trousers. Gonzales' motion to suppress the physical evidence and statements made following his arrest was denied, and he pleaded guilty.

## II

██ Gonzales was not illegally detained before seizure of the contraband. The briefs in this case were filed without benefit of our decision in *People* v.

---

[1] Since the prosecution lodged no relevancy objection to that statement and the issue has never been raised, we do not determine whether testimony at the preliminary hearing and subsequent superior court suppression hearing violated Penal Code section 1538.5, subdivision (i). (See, e.g., *People* v. *Williams* (1989) 213 Cal.App.3d 1186, 1195 [262 Cal.Rptr. 303]; *Anderson* v. *Superior Court* (1988) 206 Cal.App.3d 533, 539-544 [253 Cal.Rptr. 651].)

*Lopez* (1989) 212 Cal.App.3d 289 [260 Cal.Rptr. 641]; but as that opinion makes clear, a defendant is not detained where police "merely ask questions or request identification." (*Id.*, at p. 291; see *INS* v. *Delgado* (1984) 466 U.S. 210, 216 [80 L.Ed.2d 247, 255, 104 S.Ct. 1758]; *Florida* v. *Royer* (1983) 460 U.S. 491, 501 [75 L.Ed.2d 229, 238-239, 103 S.Ct. 1319].) Raney's earlier contacts with defendant were consensual and casual. In this instance the officer made no show of force or effort to restrain Gonzales before removing the bag. There was no detention before the contraband was seized.

### III

■ If Raney had probable cause to believe Gonzales possessed illegal drugs, the search and seizure are justifiable as incident to a lawful arrest. It matters not that they occurred before a formal arrest: "[I]f the officer is entitled to make an arrest on the basis of information available to him before he searches, and as an incident to that arrest is entitled to make a reasonable search of the person arrested and the place where he is arrested, there is nothing unreasonable in his conduct if he makes the search before instead of after the arrest. In fact, if the person searched is innocent and the search convinces the officer that his reasonable belief to the contrary is erroneous, it is to the advantage of the person searched not to be arrested. [ ] [I]f he is not innocent or the search does not establish his innocence, the security of his person, house, papers, or effects suffers no more from a search preceding his arrest than it would from the same search following it." (*People* v. *Simon* (1955) 45 Cal.2d 645, 648 [290 P.2d 531].) ■ Probable cause "has been generally defined to be such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime." (*People* v. *Ingle* (1960) 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577].) It "is a fluid concept—turning on the assessment of probabilities in particular factual contexts . . . ." (*Illinois* v. *Gates* (1983) 462 U.S. 213, 232 [76 L.Ed.2d 527, 541, 103 S.Ct. 2317].) ■ Although the question here is a close one, we believe the circumstances support a finding of probable cause. (*Id.*, at p. 238 [76 L.Ed.2d at p. 548])

Defendant admitted recent drug use. His arms were recently observed to have been punctuated by needle marks. The officer observed his emaciated physical condition. Gonzales' hand movement to the front pants pocket also supported a finding of probable cause. (*People* v. *Webb* (1967) 66 Cal.2d 107, 112 [56 Cal.Rptr. 902, 424 P.2d 342, 19 A.L.R.3d 708].) This motion might be likened to that of a " 'kid with his hand caught in the cookie jar.' " (*People* v. *Fay* (1986) 184 Cal.App.3d 882, 893 [229 Cal.Rptr. 291] [Mrs. Remer' cookie jar?].) In addition, Gonzales' story, that he was searching for a stolen bicycle while burdened with a bundle of clothing, was dubious. The

court could factor this possible lie into the probable cause analysis, as well as the officer's "extensive experience and knowledge of drug-related matters and [his conclusion that] the package was substantially identical" to those he had seen on numerous occasions. (*Ibid.; People* v. *Stanfill* (1985) 170 Cal.App.3d 420, 424-426 [216 Cal.Rptr. 472].)

■■ Gonzales makes much of Raney's preliminary hearing testimony that he did not believe probable cause existed when he removed the baggy from defendant's pocket. But the court apparently did credit the officer's subsequent clarification, even though Raney continued to articulate some doubt as to his probable cause. We do not decide whether this new testimony was sufficient to demonstrate a subjective belief that there was probable cause to arrest before the examination of the contents of the bag. The court need only to review "the challenged searches under a standard of objective reasonableness without regard to the underlying intent or motivation of the officers involved." (*Scott* v. *United States* (1978) 436 U.S. 128, 138 [56 L.Ed.2d 168, 178, 98 S.Ct. 1717], fn. omitted; *United States* v. *Robinson* (1973) 414 U.S. 218, 236 [38 L.Ed.2d 427, 441, 94 S.Ct. 467]; *People* v. *Le* (1985) 169 Cal.App.3d 186, 193-195 [215 Cal.Rptr. 106]; 1 LaFave, Search and Seizure (2d ed. 1987) § 3.2(b), pp. 566-570; cf. *DiPasquale* v. *State* (1979) 43 Md.App. 574 [406 A.2d 665].) ■ ■■■ In short, Raney's legal assessment was largely irrelevant if the search was reasonable viewed objectively from a judicial perspective.[2] (*Scott* v. *United States, supra,* at p. 139, fn. 13 ["On occasion, the motive with which the officer conducts an *illegal* search may have some relevance in determining the propriety of applying the exclusionary rule."] (italics added].)[3]

■■ This case is distinguishable from two pre-Proposition 8 opinions, *Remers* v. *Superior Court* (1970) 2 Cal.3d 659 [87 Cal.Rptr. 202, 470 P.2d 11] and *Cunha* v. *Superior Court* (1970) 2 Cal.3d 352 [85 Cal.Rptr. 160, 466 P.2d 704]. In *Cunha* officers merely observed some sort of street transaction in a known narcotics area. They had no particular suspicion concerning the

[2] Although California case law suggests the contrary (see, e.g., *Ingersoll* v. *Palmer* (1987) 43 Cal.3d 1321, 1329 [241 Cal.Rptr. 42, 743 P.2d 1299]; *In re Tony C.* (1978) 21 Cal.3d 888, 893 [148 Cal.Rptr. 366, 582 P.2d 957]; *Mestas* v. *Superior Court* (1972) 7 Cal.3d 537, 542 [102 Cal.Rptr. 729, 498 P.2d 977]), federal law controls application of exclusionary remedies post-Proposition 8 (Cal. Const., art. I, § 28, subd. (d)). (*People* v. *Uhler* (1989) 208 Cal.App.3d 766, 770, fn. 1 [256 Cal.Rptr. 336]; *People* v. *Le, supra,* 169 Cal.App.3d at p. 195.) *Ingersoll* did appear after passage of Proposition 8, but it was a civil action and did not directly concern application of the exclusionary rule.

[3] Of course, to the extent Raney's equivocation tended to undermine his claimed expertise about narcotics packaging practices in Buena Clinton, it was relevant to the determination of objective reasonableness. His testimony was certain on that point, however. His doubt as to the sufficiency of the probable cause more likely sprang from previous encounters with the *Cunha/Remers* line of authority than the evidence before him in the field, i.e., a legal rather than factual concern.

defendant's drug use or trafficking history, and they did not actually see any object or money exchanged. In *Remers* officers did see a tinfoil-wrapped object change hands while the defendant looked furtively over her shoulder. The Supreme Court found no probable cause nevertheless: The officers' belief that Remers previously sold drugs was unsupported and ultimately erroneous. The packaging was nondescript and, as the officer admitted, might have contained cookies. Presence in a high crime area could not convert what appeared to be innocent activity into criminal enterprise.

Here the packaging was known to the officer to be commonly used for drugs: A sandwich could hardly fit in Gonzales' front pocket. Its "distinctive character . . . spoke volumes as to its contents—particularly to the trained eye of the officer." (*Texas* v. *Brown* (1983) 460 U.S. 730, 743 [75 L.Ed.2d 502, 514, 103 S.Ct. 1535]; see also *People* v. *Valdez* (1987) 196 Cal.App.3d 799, 806-807 [242 Cal.Rptr. 142]; *People* v. *Stanfill, supra,* 170 Cal.App.3d at pp. 424-426.) Raney also properly considered Gonzales' recent admission of drug use, deteriorating physical condition, and unlikely explanation for his presence on the street. Viewed objectively, these facts, coupled with Buena Clinton's notorious reputation, gave the officer probable cause to arrest under the commonsense approach of the United States Supreme Court in *Brown,* even if we were to read *Cunha* and *Remers* differently. The motion to suppress was properly denied.

Judgment affirmed.

Scoville, P. J., concurred.

**SONENSHINE, J.,** Concurring.—I would resolve the issue of the officer's belief he had probable cause to arrest in favor of the implied factual finding by the trial court that such belief existed. (*People* v. *Leyba* (1981) 29 Cal.3d 591, 596-597 [174 Cal.Rptr. 867, 629 P.2d 961].) In all other respects, I concur with the majority.

A petition for a rehearing was denied January 5, 1990, and appellant's petition for review by the Supreme Court was denied March 22, 1990.