[No. E008980. Fourth Dist., Div. Two. Jan. 15, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD VERNON BOISSARD, Defendant and Appellant.

COUNSEL

A. William Bartz, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Pat Zaharopoulos and Sara Gros-Cloren, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

HOLLENHORST, J.—Following the denial of his Penal Code section 1538.5 motion, defendant pleaded guilty to possessing methamphetamine for sale in violation of Health and Safety Code section 11378. He appeals, contending the trial court erroneously denied the suppression motion because (1) the officers lacked probable cause to arrest him, (2) the officers' search of the automobile was not incidental to his arrest, and (3) the officers' arrest of him for a violation of Penal Code section 148.9 was a pretext to search the automobile. We affirm.

### PROCEDURAL AND FACTUAL BACKGROUND

During the hearing on defendant's motion to suppress, the only witnesses were two sheriff's deputies who testified:

At approximately 7:30 a.m., on September 2, 1990, they received a radio dispatch that a named informant had reported two men were "walking truck to truck trying to sell drugs" to several truck drivers at a Unocal 76 station in Blythe. The informant said "one [man] was White and one was Mexican. They both were wearing ponytails." The White male had brown hair and was wearing shorts. The informant also said that the men "were in a white Celebrity that was currently parked next to a Ryder u-haul that was towing a red Ford Escort."

When the deputies arrived at the Unocal 76 station, they saw the described two men standing next to "a car that matched the description [they] were given." The two men looked at the black and white sheriff's unit the deputies were driving and started walking away in different directions. As defendant walked away at "a fast or quick pace," one of the deputies told him "to stop and come back."

When the deputy asked defendant his name, he responded "John Victor Bouschard" and spelled the last name. Defendant, who did not have any identification on him, told the deputy "he had a Texas driver's license four years ago."

The deputy believed defendant had lied about his name because: defendant's companion, "John," said defendant's name was "Rick"; when the

deputy asked defendant "his middle name . . . [h]e paused again and said it was Victor"; and defendant "paused a lot between each spelling. He also refused to respell his name again," saying: "You already got it."

In an attempt to confirm defendant's identity, the deputy asked the dispatcher to check the system, giving her defendant's "[l]ast name, middle name, first name and date of birth. Also asked her to check Texas for a DO state." The dispatcher was unable to find any reference "in any state including Texas," although it "[s]till should have been in the system."

During a consent search of defendant's person, the deputy found a set of car keys. The deputy thought this was unusual because defendant had denied driving a vehicle, saying he "and his friend were just hitchhiking." At this point, the experienced deputy did not believe defendant "[b]ecause the description matched both the cars and the Ryder truck and both the suspects' descriptions matched exactly what the informant had [reported]. And [the deputy] had no reason to think that the informant would just call in and say people were selling drugs."

Because defendant had the car keys, the deputy "asked [him] for consent to search the car [for drugs], and he declined."

At this point, the deputy arrested defendant for giving a false name (Pen. Code, § 148.9) although he "had made that decision long before." The experienced deputy had decided to arrest defendant because he considered defendant's conduct suspicious, defendant's companion had identified defendant as "Rick," and the deputy "couldn't confirm [defendant's] identity even through Texas."

After he arrested defendant, the deputy learned defendant's true name and confirmed it by checking the system. When the deputy asked defendant why he had given a false name, defendant replied: "Old habits die hard."

Defendant was standing "[r]ight next to" the described white Celebrity when the deputy arrested him. After arresting defendant, the deputy "secured the other suspect" before searching the car. The deputy found 2.2 grams of drugs "underneath the right front passenger seat on top of [a] pair of black nylon shorts. He then told the two men he was arresting them for possession of drugs for sale, and defendant responded, "I know." At some point during the detention and arrest of defendant, the deputy received information that defendant had been driving the car with the permission of the owner.

Approximately five to ten minutes after the deputies arrived and about five minutes after defendant had been arrested, the other deputy went to talk

to a citizen informant who said "that while he was working in the truck wash base, a white male wearing brown hair pulled back in a ponytail and shorts had asked him if he wanted to buy some crystal . . . [and pointed out defendant as] the white guy . . . ." There were no "other white males in shorts with a ponytail at the truck stop."

In support of his motion to suppress, defendant argued: (1) the deputies lacked probable cause to arrest him for a Penal Code section 148.9 misdemeanor offense, (2) the deputies' search of the car was not incidental to his arrest, and (3) the deputies' arrest of him for the misdemeanor offense was a pretext to search the car. The People responded: (1) defendant was lawfully arrested for the misdemeanor offense, (2) probable cause existed to arrest him for a drug-related offense, and (3) the warrantless search of the car was lawful as an incident to the arrest. The trial court denied defendant's suppression motion "on the basis that the search was pursuant to a lawful arrest under 148.9." Defendant appealed.

### STANDARD OF REVIEW

In reviewing defendant's motion to suppress, we are bound by the trial court's factual findings, whether express or implied, if they are supported by substantial evidence. However, we review questions of law independently to determine whether the challenged seizure meets constitutional standards of reasonableness. (*People* v. *Loewen* (1983) 35 Cal.3d 117, 123 [196 Cal.Rptr. 846, 672 P.2d 436]; *People* v. *Leyba* (1981) 29 Cal.3d 591, 596-597 [174 Cal.Rptr. 867, 629 P.2d 961].)

### DISCUSSION

On appeal, defendant contends the trial court erroneously denied his suppression motion, arguing (1) the deputies lacked probable cause to arrest him for a Penal Code section 148.9 misdemeanor offense, (2) the deputies' search of the car was not incidental to his arrest, and (3) the deputies' arrest of him for the misdemeanor offense was a pretext to search the car. We affirm.

A. *Probable Cause to Arrest Defendant:*

"Probable cause to arrest exists when facts known to the arresting officers would lead a man of ordinary care and prudence to believe or to entertain a strong suspicion that the person to be arrested has committed a crime. [Citations.]" (*People* v. *Hernandez* (1988) 47 Cal.3d 315, 341 [253 Cal.Rptr. 199, 763 P.2d 1289].) Furthermore, this rule should not be understood as placing the ordinary man and the experienced officer in the same

class. (*People* v. *Superior Court* (*Kiefer*) (1970) 3 Cal.3d 807, 827 [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559].) ██ ██ And, " '[e]ach case must be decided on its own facts and circumstances [citations] —and on the total atmosphere of the case. [Citations.]' [Citation.]" (*Ibid.*)[2]

In *People* v. *Hunt* (1990) 225 Cal.App.3d 498 [275 Cal.Rptr. 367], the defendant, who was a passenger in a car which was stopped for a traffic violation, identified himself as Paul Hunt. A record and driver's license check with the Department of Motor Vehicles reported that Paul Hunt was five feet seven inches tall. Because the defendant was obviously taller, the officer asked the defendant to step out of the car. After confirming his impression that defendant was six feet two inches tall, the officer arrested defendant for giving false information to a police officer (Pen. Code, § 148.9). The reviewing court concluded the seven-inch "discrepancy in height gave the officer probable cause to arrest defendant for violation of section 148.9" and affirmed. (225 Cal.App.3d at p. 506.)

 In this case, the deputy testified he arrested defendant for falsely identifying himself to the deputy because: defendant's companion (John) said defendant's name was "Rick," but defendant said his name was "John Victor Bouschard," pausing after his first and second names, and between each letter as he spelled his last name; defendant did not have any identification on him; and he refused to spell his unusual last name again after the

---

[2]In defendant's reply brief, he urges that in determining whether the deputy was justified in arresting him for the misdemeanor offense, the standard applicable "is whether circumstances exist that would cause a reasonable person to believe a crime has been committed in his presence." (*In re Alonzo C.* (1978) 87 Cal.App.3d 707, 712 [151 Cal.Rptr. 192].) Relying on *In re Alonzo C., supra,* he argues that because the deputy did not learn of his actual identity until after the arrest, the deputy could not testify to acts which constitute every material element of the misdemeanor offense. Defendant's argument is unpersuasive.

*Alonzo C.* stresses that to justify a warrantless arrest the misdemeanor offense must be committed in the presence of the officer and states: "The test is whether the misdemeanor 'is apparent to the officer's senses.' [Citation.] Any and all of the senses are included. [Citations.] . . . [¶] The question of reasonable cause to believe that a misdemeanor is taking place in the officer's presence is measured by the events observable to the officer at the time of the arrest. If the officer cannot testify, based on his or her senses, to acts which constitute every material element of the misdemeanor, it cannot be said that the officer has reasonable cause to believe that the misdemeanor was committed *in his presence.* [Citations.]" (*In re Alonzo C., supra,* 87 Cal.App.3d 707, 712-713.)

In this case, the uncontradicted evidence established that defendant identified himself to the deputy as "John Victor Bouschard" and that is not defendant's name. Also uncontradicted is the deputy's testimony describing the events he observed which caused him to believe defendant was not the person he claimed to be. Probable cause to arrest for an offense committed in an officer's presence deals in probabilities and does not require a prima facie showing of proof beyond a reasonable doubt. Accordingly, if the events described by the deputy "would lead a man of ordinary care and prudence to believe or to entertain a strong suspicion" (*People* v. *Hernandez, supra,* 47 Cal.3d at p. 341) that defendant was not "John Victor Bouschard," the fact that the deputy did not learn defendant's actual identity until after the arrest is irrelevant to our consideration of the reasonableness of the deputy's belief.

dispatcher found no reference in the system to the name and date of birth provided by defendant despite his claim to a Texas driver's license four years previously. And, after the deputy found the car keys while searching defendant with his consent and he denied driving the car, saying he "and his friend were just hitchhiking," the experienced deputy believed defendant was lying because defendant, his companion and their car "matched exactly" the description provided by the informant. Furthermore, the deputy had observed defendant's attempt to leave the scene when he saw the uniformed deputies arrive in the black and white sheriff's unit.

The "total atmosphere" of this case—the different names given, defendant's hesitancy in giving his full name and in spelling his last name, his refusal to spell again his unusual last name, the absence of any record in the system and his efforts to avoid apprehension—gave the deputy probable cause to arrest defendant for the misdemeanor false identification offense.

▮ Furthermore, the record in this case demonstrates that the deputy had probable cause to arrest defendant for a felony drug offense.

It is well established that citizen informants who are witnesses to a criminal act are presumptively reliable unless the circumstances cast doubt on their information (*People* v. *Ramey* (1976) 16 Cal.3d 263, 269 [127 Cal.Rptr. 629, 545 P.2d 1333]), and that in certain circumstances an inference of unlawful activity may be drawn where a person who sees a uniformed officer in a marked car attempts to avoid the officer (*People* v. *Huntsman* (1984) 152 Cal.App.3d 1073, 1091 [200 Cal.Rptr. 89]).

This case involved at least one citizen informant[3] and several attempts at avoidance by defendant: Defendant, his companion and their car "matched exactly" the description provided by an informant who identified himself when he reported the two men were "walking truck to truck trying to sell drugs" to several truck drivers at the Unocal 76 station; the deputy had no reason to question the reliability of the identified informant; when defendant and his companion saw the uniformed deputies arrive at the Unocal 76 station in a black and white sheriff's unit, they began walking away from the car; defendant, who had no identification on his person, said his name was "John" while his companion who was named "John," said defendant's name was "Rick"; defendant denied driving a car, saying they were hitchhiking, although the deputy found the car keys in defendant's possession during a consent search of defendant's person; after defendant's unsuccessful attempts at avoidance of the deputies, he was identified at the scene by a

---

[3]It is unclear from the record before us whether the person who identified defendant at the arrest scene as the person who tried to sell crystal to him was the identified informant whose report initiated the investigation.

citizen informant as the person who had offered to sell the informant some "crystal"; and, no other person at the Unocal station matched the description provided by the informant whose report prompted the investigation.

Viewing these additional circumstances "under a standard of objective reasonableness, without regard to the underlying intent or motivation of the officers involved" (*Scott* v. *United States* (1978) 436 U.S. 128, 138 [56 L.Ed.2d 168, 178, 98 S.Ct. 1717], fn. omitted; *People* v. *Gonzales* (1989) 216 Cal.App.3d 1185, 1190 [265 Cal.Rptr. 507]; *People* v. *Loudermilk* (1987) 195 Cal.App.3d 996, 1005 [241 Cal.Rptr. 208]), we conclude, as the prosecutor argued, the deputy had probable cause to arrest defendant for trying to sell drugs.

In view of the foregoing, we conclude defendant was lawfully arrested.

B. *Car Search Incident to Defendant's Arrest:*[4]

■ In support of defendant's contention the search of the car was not incidental to his arrest, he argues: (1) the record clearly establishes he was not inside or even within "arm's reach" of the car when he was arrested; (2) *New York* v. *Belton*[5] is inapplicable because he was afoot and not an occupant when he was detained and arrested; and, (3) the search of the automobile was an unlawful "general fishing" expedition because the deputy was not searching for evidence of defendant's identity and, in fact, the deputy had never asked defendant whether he had identification on him.

(1) *"Arm's Reach"—Chimel v. California:*[6]

Defendant argues the record clearly establishes he was not within "arm's reach" of the car when he was arrested.

■ Emphasizing "that '[t]he scope of [a] search must be "strictly tied to and justified by" the circumstances which rendered its initiation permissible,'" the Supreme Court in *Chimel* v. *California, supra,* 395 U.S. 752, 762-763 [23 L.Ed.2d 685, 693-694], held that to prevent the concealment or

[4]Although the Attorney General argues that the deputy could have validly searched the car under the automobile exception (see *Carroll* v. *United States* (1925) 267 U.S. 132 [69 L.Ed. 543, 45 S.Ct. 280, 39 A.L.R. 790], and its progeny, holding that a warrantless search of a car based upon probable cause to believe it contains evidence of crime did not contravene the Fourth Amendment), as defendant correctly points out in his reply brief, the prosecution did not argue this ground below. Accordingly, the People may not assert this new theory on appeal to support the trial court's suppression ruling. (See *Green* v. *Superior Court* (1985) 40 Cal.3d 126, 137 [219 Cal.Rptr. 186, 707 P.2d 248].)

[5]*New York* v. *Belton* (1981) 453 U.S. 454 [69 L.Ed.2d 768, 101 S.Ct. 2860].

[6]*Chimel* v. *California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034].

destruction of evidence and to protect the officer, the permissible scope of a warrantless search incident to a lawful custodial arrest extends to the arrestee and the immediately surrounding area.

To the extent defendant's "arm's reach" argument concerns defendant's physical proximity to the car, it involves a factual determination. Accordingly, we are bound by the implied finding of the trial court if it is supported by substantial evidence. (*People* v. *Loewen, supra,* 35 Cal.3d 117, 123; *People* v. *Leyba, supra,* 29 Cal.3d 591, 596-597.)

The record discloses: When defendant saw the uniformed deputies arriving in the black and white sheriff's unit, he was *near the front of the white Celebrity* and he started walking away; he walked at "a fast or quick pace," and was "anywhere between ten to thirty feet" away; the deputy told defendant "to stop and come back" because the deputy needed to investigate the report; and defendant was *standing "[r]ight next to the car when he was arrested." (Italics added.)*

In view of the foregoing substantial evidence, we are bound by the implied factual finding defendant was immediately adjacent to the searched car when he was lawfully arrested. (*People* v. *Loewen, supra,* 35 Cal.3d 117, 123; *People* v. *Leyba, supra,* 29 Cal.3d 591, 596-597.)

Defendant argues the following factors listed in *U.S.* v. *Vasey* (9th Cir. 1987) 834 F.2d 782, are relevant to our determination the car search was properly limited to defendant's "arm's reach": "the number of persons being arrested, the number of officers present, the officer(s)' physical positioning with regard to the arrestee and the place searched, the display of guns by the officers, and the distance between the arrestee and the place searched." (*Id.,* at p. 787.)[7]

Addressing that argument, we reiterate that defendant was immediately adjacent to the car when he was arrested, and, we observe, that although initially there were two deputies and two suspects, defendant was the only person arrested and one deputy left to talk with a citizen informant. Although it is unclear from the record what the arresting deputy's position was in relation to defendant, his companion or the car, the deputy testified he arrested defendant and secured defendant's companion prior to the car search. Furthermore, there is no evidence of any display of guns by the deputies.

---

[7]The *Vasey* court adopted these factors from *United States* v. *McConney* (9th Cir. 1984) 728 F.2d 1195, 1207. In *McConney,* the defendant was arrested indoors and ordered by several agents with drawn guns to move to a position on the floor next to a sofa. *McConney* did not involve the search of a place known for its inherent mobility and diminished expectation of privacy.

Additional factors relevant to this analysis include: the inherent mobility and the diminished expectation of privacy which surrounds the place to be searched—the car; the likelihood the place to be searched—the car—contained evidence of the offense——-defendant's identification, and possibly drugs and weapons; the access defendant's companion would have to the car and its contents; and the on-the-scene unequivocal identification by a citizen informant of defendant as the person who had tried to sell the informant drugs.

 Moreover, the evidence is uncontroverted that the search at the scene was contemporaneous with defendant's arrest for both the misdemeanor false identification offense and the felony drug offense. (See *United States* v. *Salazar* (9th Cir. 1986) 805 F.2d 1394, 1399 [search may precede suspect's formal arrest as long as search and arrest are relatively contemporaneous]; *People* v. *Cockrell* (1965) 63 Cal.2d 659, 666 [47 Cal.Rptr. 788, 408 P.2d 116] [the test is whether the search is "substantially contemporaneous"]; *People* v. *Gonzales, supra,* 216 Cal.App.3d 1185, 1189; see 4 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) § 2394, p. 2836.)[8]

(2) *"Afoot"—New York* v. *Belton:*

In *New York* v. *Belton, supra,* 453 U.S. 454, the Supreme Court expressly stated its purpose was to preclude the preceding type of inquiry and to provide a "workable definition of 'the area within the immediate control of the arrestee' when that area arguably includes the interior of an automobile and the arrestee is its recent occupant. . . ." (*New York* v. *Belton, supra,* 453 U.S. 454, 460 [69 L.Ed.2d 768, 774].) *Belton* held "that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." (*Ibid.* [69 L.Ed.2d at p. 775], fns. omitted.)

Defendant argues *Belton* is inapplicable because he was afoot and not an occupant when he was detained and arrested. This argument seeks to distinguish between arrests of people in the car from arrests of people recently vacating the car. Such a distinction would defeat the purpose of the *Belton* straight-forward rule and would require a case-by-case determination concerning the status of the arrestee. Furthermore, the arrestee need not be inside the car for a search incident to an arrest to be valid. (See *New York* v. *Belton, supra,* 453 U.S. 454, 456-457, 459 [69 L.Ed.2d 768, 772-774]; *United States* v. *Salazar, supra,* 805 F.2d 1394, 1399; *People* v. *Stoffle* (1991) 1 Cal.App.4th 1671 [3 Cal.Rptr.2d 257].)

---

[8]In *Vasey*, the court held the car search which was conducted 30 to 45 minutes after defendant had been arrested, fell "outside the *Belton* prophylactic rule because it was not conducted contemporaneously with the arrest." (834 F.2d 782, 787.)

█ Moreover, in this case, " '[t]he scope of [the] search [of the car was] "strictly tied to and justified by" the circumstances which rendered its initiation permissible.' " (*New York* v. *Belton, supra*, 453 U.S. at p. 457 [69 L.Ed.2d at p. 773], quoting *Chimel* v. *California, supra*, 395 U.S. 752, 762 [23 L.Ed.2d 685, 693], emphasizing the principle stated in *Terry* v. *Ohio* (1967) 392 U.S. 1, 19 [20 L.Ed.2d 889, 904-905, 88 S Ct 1868].)

The uncontradicted evidence in this case established that defendant was afoot, standing next to the car, when he was first observed by the deputies and when he was arrested; a reliable informant had reported defendant and his companion were in the car; defendant had the keys in his pocket; at some point during the detention and arrest of defendant, the deputy received information that defendant had been driving the car with the permission of the owners; and, the contraband was found in the passenger compartment "underneath the right front passenger seat on top of [a] pair of black nylon shorts."

In view of the nexus between the car and defendant, the fact that defendant had the car keys but not his identification on his person, and the probability that he had left his identification in the car, there existed a justification to search the car for defendant's identification—evidence related to the misdemeanor offense.

In view of the nexus between the car, defendant, and his companion, their accessibility to the car and its contents, the informant's report the two men were trying to sell drugs, the well-known fact that drug traffickers usually carry weapons, and the citizen informant's identification of defendant at the scene as the man who had tried to sell him some crystal, an even greater justification existed to search the car to prevent the destruction of the drugs and for the safety of the deputies. (See *People* v. *Stoffle, supra*, 1 Cal.App.4th 1671, 1679.)

In view of the foregoing, we conclude the deputy was not "fishing" when he lawfully searched the car.

C. *Misdemeanor Arrest Pretext to Search Car:*

Defendant's final contention, the arrest for the misdemeanor offense was a pretext to search the car, overlooks the uncontradicted testimony of the deputy that he had decided to arrest defendant for falsely identifying himself long before defendant refused to consent to a search of the car. This substantial evidence supports the implied factual finding by which we are bound. (*People* v. *Loewen, supra*, 35 Cal.3d 117, 123; *People* v. *Leyba, supra*, 29 Cal.3d 591, 596-597.)

■ Furthermore, although it is true "[a]n arrest may not be used as a pretext to search for evidence" (*United States* v. *Lefkowitz* (1932) 285 U.S. 452, 467 [76 L.Ed. 877, 883-884, 52 S.Ct. 420, 82 A.L.R. 775]), it is well settled that "[t]he lawfulness of the search is examined 'under a standard of objective reasonableness, without regard to the underlying intent or motivation of the officers involved.' (*Scott* v. *United States* (1978) 436 U.S. 128, 138 [56 L.Ed.2d 168, 178, 98 S.Ct. 1717], fn. omitted; *People* v. *Decker* (1986) 176 Cal.App.3d 1247, 1250 [222 Cal.Rptr. 689].)" (*People* v. *Loudermilk, supra,* 195 Cal.App.3d 996, 1005.)

Having determined under "a standard of objective reasonableness" that the deputy lawfully arrested defendant and searched the car, we need not delve into his "underlying intent or motivation."

Judgment affirmed.

Ramirez, P. J., and Dabney, J., concurred.