Filed 11/6/24  P. v. Tiss CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C097824 |
| Plaintiff and Respondent, | (Super. Ct. No. 20F6486) |
| v. | |
| RYAN JEFFREY TISS, | |
| Defendant and Appellant. | |

A trained drug-sniffing canine alerted to defendant Ryan Jeffrey Tiss's vehicle following a traffic stop, leading to the discovery of approximately 37 pounds of methamphetamine, one-half pound of heroin, and a Remington .308 rifle.  After the trial court denied a motion to suppress the evidence seized from the vehicle, defendant pleaded guilty to several felony drug charges and to possession of a firearm by a felon. He also admitted an enhancement based on the weight of the illegal drug involved in the crime.  The court sentenced defendant to 13 years 8 months in state prison.

1

On appeal, defendant challenges the trial court's denial of his suppression motion, arguing that the search of his vehicle lacked probable cause because the dog *could* have alerted to a legal amount of cannabis.  He also argues that defense counsel provided ineffective assistance of counsel by failing to argue that there was no reasonable suspicion for the initial traffic stop.  Finally, defendant claims his sentence should be vacated and the matter remanded for resentencing because the trial court (1) failed to consider and give "great weight" to the mitigating circumstance that his current offenses were not violent, within the meaning of Penal Code section 1385, subdivision (c);[1] and (2) did not understand it had discretion to strike the charged weight enhancement and impose a lesser, uncharged weight enhancement pursuant to *People v. Tirado* (2022) 12 Cal.5th 688 (*Tirado*).  We will affirm.

BACKGROUND FACTS AND PROCEDURE

On the evening of October 1, 2020, California Highway Patrol Officer Justin Haynes was traveling on Interstate 5 in Shasta County when he noticed a vehicle in the number two lane drift slowly to the left such that the left tires "drove over" the raised markers separating the number one and two lanes.  The officer then observed the vehicle slowly drift to the right, two to three feet into the number three lane, at which time the driver activated a turn signal and completed the lane change.

Officer Haynes stopped the vehicle on the suspicion the driver might be intoxicated.  Defendant, the driver, appeared "very nervous," had "mumbled" speech, and was "not making eye contact."  Officer Haynes asked defendant to step out of the vehicle for a field sobriety test.

After concluding that defendant was not under the influence, Officer Haynes began writing defendant a warning ticket.  As this occurred, another officer informed Officer Haynes that a broken syringe cap had been observed in plain view on the driver's

---

[1] Undesignated section references are to the Penal Code.

side seat or floorboard. Officer Haynes requested permission to search the vehicle. Defendant declined, stating that he was "late to get to Redding, but if [the officer] stopped him tomorrow, . . . [he] could search it then."

Another officer then took over writing the warning ticket, while Officer Haynes used his narcotics-trained canine to conduct an exterior "sniff" of defendant's vehicle. The dog was trained and certified to detect four substances: methamphetamine, cocaine, heroin, and marijuana. The dog began sniffing on the passenger side and "bracketed" that side of the car—meaning the dog went "back and forth"—no fewer than five times. This led Officer Haynes to believe the dog was attempting to "pinpoint" the source of an odor. The dog then moved around to the driver's side and "bracketed" about six more times. Although the dog never gave a "final response," Officer Haynes concluded from the dog's behavior that the vehicle likely contained narcotics.

After securing the dog, Officer Haynes searched defendant's vehicle and found approximately 37 pounds of methamphetamine, one-half pound of heroin, and a Remington .308 rifle. The narcotics were found in a large duffle bag in the center portion of the trunk against the back of the rear seat. Officer Haynes also found the broken syringe cap that had been observed by the other officer.

A complaint filed by the Shasta County District Attorney charged defendant with transportation for the sale of heroin (Health & Saf. Code, § 11352, subd. (b); count 1), transportation for the sale of methamphetamine (Health & Saf. Code, § 11379, subd. (b); count 2), sale or transportation of heroin (Health & Saf. Code, § 11352, subd. (a); count 3), transportation of methamphetamine (Health & Saf. Code, § 11379, subd. (a); count 4), possession for the sale of heroin and methamphetamine (Health & Saf. Code, §§ 11351 & 11378; count 5 & 6), and possession of a firearm by a convicted felon (§ 29800, subd. (a); count 7). The complaint also alleged that the methamphetamine exceeded 10 kilograms by weight (Health & Saf. Code, § 11370.4, subd. (b)(3)).

Defendant waived his right to a preliminary hearing and the complaint was deemed an information.

On February 11, 2021, defendant filed a section 1538.5 motion to suppress the evidence obtained from the search of his vehicle. Defendant argued that because the dog *could have* been reacting to the scent of a legal amount of marijuana, the dog's behavior did not provide probable cause for the search. The People opposed the motion.

At the motion to suppress hearing, Officer Haynes testified that, based on his experience as a canine handling officer, he was familiar with his dog's behavior when sniffing for narcotics. He testified that "[i]f there was no odor, my dog would typically just walk the side of the car and keeping going around the front, but if he brackets, . . . it leads me to believe he's attempting to source the odor of something." He explained that the dog was trained with 10-, 20-, and 30-gram quantities of each of the four substances, and that greater quantities of substances make it more difficult for the dog to pinpoint the source. He described as an example a dresser containing six drawers: "If I put an ounce or less of one of those substances in one of those drawers, I am extremely confident that [the canine is] going to pick out exactly what drawer and go to the nearest seam on that drawer where the odor is closest to and give me a final response by either sitting, laying down, or standing up, and freezing. But if you put 37 pounds in one those six dresser drawers, the odor is so overwhelming that he's not probably going to pinpoint the exact same drawer." In this case, based on his observations of the dog's behavior, Officer Haynes believed there was so much odor in or about the vehicle that the smell was overwhelming and, as a result, the dog could not "pinpoint the exact location of it."

The trial court denied the motion to suppress. Defendant subsequently pleaded guilty to all the charges and admitted the enhancement.

On December 5, 2022, the trial court sentenced defendant to 13 years 8 months in state prison—the low term of three years for transportation for the sale of methamphetamine (count 2), an eight month (one-third the middle term) consecutive

4

sentence for possession of a firearm by a felon (count 7), and a ten-year consecutive sentence for the weight enhancement. The court imposed a concurrent term of four years (the middle term) for transportation for the sale of heroin (count 1). All other sentences were stayed pursuant to section 654.

Defendant filed a timely notice of appeal.

DISCUSSION

I

*Motion to Suppress*

Defendant argues that because the drug-sniffing dog was trained to detect, among other drugs, marijuana, which in certain amounts is legal to possess and transport in California, the dog's positive alert did not furnish probable cause to search his vehicle for illegal contraband. We conclude the trial court correctly determined that the search was supported by probable cause.

The Fourth Amendment protects people from "unreasonable" searches and seizures. (U.S. Const., 4th Amend.) Although a warrantless search is presumed to be unreasonable, and therefore illegal, the warrant requirement is subject to " 'a few specifically established and well-delineated exceptions.' " (*People v. Johnson* (2020) 50 Cal.App.5th 620, 625.) One such exception is the automobile exception, which allows the warrantless search of a vehicle if the investigating officer has probable cause to believe the vehicle contains contraband or evidence of criminal activity. (*People v. Hall* (2020) 57 Cal.App.5th 946, 951.)

To determine if there was probable cause for a search, we examine the events leading up to the search and decide whether, based on the totality of circumstances, there was a "fair probability" that contraband or evidence of a crime would be found. (*People v. Moore* (2021) 64 Cal.App.5th 291, 298; *People v. Farley* (2009) 46 Cal.4th 1053, 1098; *Illinois v. Gates* (1983) 462 U.S. 213, 243, fn. 13 [probable cause requires only a probability or substantial chance of criminal activity].) We view the facts from the

standpoint of an objectively reasonable officer; the investigating officer's subjective intention or motive plays no role. (*Whren v. United States* (1996) 517 U.S. 806, 812-813; *People v. Gonzales* (1989) 216 Cal.App.3d 1185, 1190.) An officer may rely on training and experience to draw inferences from the facts he or she observes, as long as those inferences are grounded in objective facts and capable of rational explanation. (*Moore, supra,* at pp. 297-298.) When police officers work together, an officer may rely on the collective knowledge of all the officers involved in the investigation to establish probable cause. (*People v. Ramirez* (1997) 59 Cal.App.4th 1548, 1555; *United States v. Balser* (1st Cir. 2023) 70 F.4th 613, 619.)

On appeal from the denial of a suppression motion, we review the trial court's factual findings under the deferential substantial evidence standard. (*People v. Johnson, supra*, 50 Cal.App.5th at p. 627.) We exercise our independent judgment in determining, on the facts found, whether the search was constitutionally reasonable. (*Id*. at pp. 627-628.)

At issue here is whether a drug-sniffing dog's alert, under the totality of the circumstances, gave the officer probable cause to search defendant's vehicle for illegal narcotics. Defendant admits that an alert by a canine trained to detect narcotics "[n]ormally" provides probable cause for a search. (See, e.g., *People v. Stillwell* (2011) 197 Cal.App.4th 996, 1006; *People v. Bautista* (2004) 115 Cal.App.4th 229, 236; *Florida v. Harris* (2013) 568 U.S. 237, 246-247, fn. 2.) However, defendant argues that after the enactment of Proposition 64, the Control, Regulate, and Tax Adult Use of Marijuana Act, as approved by voters, General Election, November 8, 2016, which decriminalized under state law the possession and transportation of small amounts of marijuana (*People v. Johnson, supra*, 50 Cal.App.5th at p. 625; Health & Saf. Code, § 11362.1), an alert from a dog trained to detect marijuana is not necessarily indicative of unlawful activity (*Johnson, supra,* at pp. 634-635), and therefore cannot provide probable cause for a vehicle search. We disagree.

6

As the United States Supreme Court has held, "a probable-cause hearing focusing on a dog's alert should proceed much like any other." (*Florida v. Harris, supra*, 568 U.S. at p. 247.) The question to be answered therefore is "whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." (*Id*. at p. 248.) "As the name implies, probable cause deals with probabilities. It requires only a probability or substantial chance of criminal activity, not an actual showing of a crime." (*People v. Diaz* (2023) 97 Cal.App.5th 1172, 1178.)

Here, the dog was trained to detect the scent of four substances—cocaine, methamphetamine, heroin, and marijuana—three of which are illegal to possess in any amount. Additionally, even after the enactment of Proposition 64, it remains unlawful to possess or transport more than 28.5 grams of cannabis; to smoke or ingest cannabis while driving or riding in a vehicle; to possess an open container or package of cannabis while driving or riding in a vehicle; and to drive a vehicle while under the influence of cannabis. (*Sellers v. Superior Court of Sacramento County* (2024) 104 Cal.App.5th 468, 476; Health & Saf. Code, §§ 11362.1, 11362.3; Veh. Code §§ 23152, 23222.) Thus, in our view, the mere possibility that a dog *may* alert to a legal amount of marijuana does not prevent a reasonable officer from concluding, under the totality of the circumstances, that the dog's alert indicated a "fair probability" that contraband or evidence of a crime would be found. (*United States v. Deluca* (10th Cir. Aug. 18, 2022, No. 20-8075) 2022 U.S. App. LEXIS 23003, at p. *13.) Such was the case here.

Because of the way in which the dog "bracketed" the car—multiple times on both sides—and repeatedly lifted its nose in the air, Officer Haynes concluded that the dog was attempting to source the odor, but the scent was so strong the dog couldn't locate its exact location. In short, the "greater quantity" made it more difficult for the dog to "pinpoint" the source. This testimony, combined with defendant's nervous behavior and the plain view observation of a loose broken syringe cap, was sufficient for a reasonable

7

officer to conclude that the vehicle contained an *unlawful amount* of marijuana and/or one of the other unlawful substances that the dog was trained to detect. (*United States v. Thomas* (9th Cir. 2013) 726 F.3d 1086, 1098.) Thus, based on the totality of the circumstances, we conclude there was probable cause to search defendant's vehicle and the trial court did not err in denying defendant's motion to suppress.

II

*Ineffective Assistance of Counsel*

Defendant next complains that defense counsel rendered ineffective assistance in litigating the motion to suppress because counsel failed to argue there was no reasonable suspicion to justify the initial stop.

To prevail on this claim, defendant must prove (1) trial counsel's performance was deficient because it fell below an objective standard of reasonableness under prevailing professional norms, and (2) the deficient performance was prejudicial, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant. (*People v. Johnson* (2015) 60 Cal.4th 966, 979-980.) If the defendant fails to make a sufficient showing on either component, the claim must fail. (*People v. Palmer* (2005) 133 Cal.App.4th 1141, 1158.)

Judicial scrutiny of counsel's performance is highly deferential. (*Strickland v. Washington* (1984) 466 U.S. 668, 689.) "It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. [Citation.] A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that

8

is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " (*Id.* at p. 689.)

" 'In the usual case, where counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions.' " (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1051.)  Applying this standard, we conclude defendant has failed to establish that his counsel rendered ineffective assistance.

A.      *Underlying Legal Principles*

A traffic stop is valid under the Fourth Amendment if the officer has "reasonable suspicion" that the Vehicle Code or some other law has been violated.  (*People v. Miranda* (1993) 17 Cal.App.4th 917, 926; *People v. Watkins* (2009) 170 Cal.App.4th 1403, 1408-1409.)  When determining whether an officer possessed reasonable suspicion for a stop, the officer's subjective motivation is irrelevant.  (*United States v. Callarman* (10th Cir. 2001) 273 F.3d 1284, 1286.)  To justify a stop, officers must be able to point to " 'specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity.' "  (*People v. Hernandez* (2008) 45 Cal.4th 295, 299; *Heien v. North Carolina* (2014) 574 U.S. 54, 60.)  The possibility of an innocent explanation does not preclude an officer from effecting a stop to investigate a reasonable suspicion of criminal conduct.  (*People v. Saunders* (2006) 38 Cal.4th 1129, 1136.)

B.      *Analysis*

Defendant contends that his counsel rendered ineffective assistance because he failed to argue there was no reasonable suspicion for the initial traffic stop.  In support of this claim, defendant cites a handful of federal and out-of-state cases, which, he contends, establish that "failure to drive in a perfectly straight line" provides no reasonable basis to stop a vehicle for lane straddling (Veh. Code, § 21658) or for suspicion of driving under the influence (Veh. Code, § 23152).  (Citing *United States v. Colin* (9th Cir. 2002)

9

314 F.3d 439 (*Colin*); *United States v. Gregory* (10th Cir. 1996) 79 F.3d 973; *State v. Tarvin* (Tex.Ct.App. 1998) 972 S.W.2d 910; *State v. Caron* (Me. 1987) 534 A.2d 978; *Rowe v. State* (2001) 363 Md. 424.)

However, the cases cited by defendant are neither binding (*People v. Camacho* (2000) 23 Cal.4th 824, 830, fn. 1) nor persuasive.

In *Colin, supra*, 314 F.3d 439—the primary case on which defendant relies—the court found no reasonable suspicion to stop the defendant for lane straddling or driving under the influence where the officer observed defendant's vehicle twice "touch" the outer lane lines, without crossing those lines, before making otherwise safe lane changes. (*Id*. at pp. 441, 444-445.) The court reasoned that because the lane straddling statute (Veh. Code, § 21658, subd. (a)) only requires that a vehicle be driven " 'as nearly as practical' " within one lane, the car's wheels "touching," but not crossing, the lines were not enough to violate the statute. (*Colin, supra*, at pp. 444-445.) The court also held that the officer had no reasonable suspicion of driving under the influence because (1) the intra-lane weaving was neither "pronounced" nor sustained over a "substantial" distance, (2) the defendant properly signaled before making lane changes, and (3) the officer never conducted a field sobriety test. (*Id*. at pp. 445-446.)

In contrast, Officer Haynes observed defendant's vehicle drift so far to the left that its tires drove "over" the raised dots separating the number one and two lanes, and then drift so far to the right that it was "about two to three feet" into the number three lane before defendant activated his signal and completed a lane change. In addition, unlike the officer in *Colin*, Officer Haynes conducted a field sobriety test.

The other cases cited by defendant are equally unpersuasive, as they generally involve a single, isolated instance of a vehicle briefly straddling a lane line. (*United States v. Gregory, supra*, 79 F.3d at pp. 976, 978; *State v. Tarvin, supra*, 972 S.W.2d at pp. 910-911; *State v. Caron, supra*, 534 A.2d at pp. 978-979.)

10

On this record, Officer Haynes had an objectively reasonable basis to stop defendant for an observed traffic violation (Veh. Code, §§ 21658 or 22107) or for suspicion of driving under the influence (Veh. Code, § 23152). (*United States v. Bloomfield* (8th Cir. 1994) 40 F.3d 910, 915 [abrupt lane change without signaling provided probable cause for a traffic stop]; *United States v. Kellam* (4th Cir. 2009) 568 F.3d 125, 136 [crossing double center line justified stop]; *United States v. Johnson* (8th Cir. 1994) 28 F.3d 1487, 1495 [improper lane change justified stop]; *United States v. Botero-Ospina* (10th Cir. 1995) 71 F.3d 783, 785, 788 [traveling well below the posted speed limit and straddling lane justified stop]; see *United States v. Cervine* (10th Cir. 2003) 347 F.3d 865, 869-870 [crossing lane divider justified stop]. Accordingly, defendant's counsel did not render ineffective assistance by failing to challenge the basis for the initial stop. (*People v. Price* (1991) 1 Cal.4th 324, 387, superseded by statute on another ground as stated in *People v. Hinks* (1997) 58 Cal.App.4th 1157, 1161 [counsel does not render ineffective assistance by failing to make motions or objections that counsel reasonably could have determined would have been futile].)

III

*Remand for Resentencing*

Defendant finally argues that a remand for resentencing is required because (1) the court failed to give "great weight" to the non-violent nature of the current offense when deciding whether to strike the weight enhancement; and (2) the court did not understand it had the discretion to impose a lesser weight enhancement pursuant to *Tirado, supra*, 12 Cal.5th 688. We disagree.

A.    *Additional Procedural Background*

Health and Safety Code section 11370.4 provides for sentence enhancements for certain drug offenses based on the weight of the drugs involved. (Health & Saf. Code, § 11370.4.) As relevant here, Health and Safety Code section 11370.4 provides a three-year enhancement if the drug involved (here, methamphetamine) exceeds one kilogram

11

by weight; a five-year enhancement if it exceeds four kilograms by weight; and a ten-year enhancement if it exceeds 10 kilograms by weight. (*Id.*, subd. (b)(1)(A)-(C).)

As part of his plea, defendant admitted the allegation that he possessed methamphetamine exceeding 10 kilograms by weight within the meaning of Health and Safety Code section 11370.4, subdivision (b). Nevertheless, at his sentencing hearing, defendant moved to dismiss the weight enhancement pursuant to section 1385, subdivision (c). Defendant argued, among other things, that dismissing the weight enhancement was "certainly" within the trial court's discretion because the current offense was "nonviolent." The prosecution opposed, arguing that dismissal would not be in the interests of justice.

The trial court denied the motion. Although the court acknowledged several factors in mitigation, the court concluded that the interests of justice did not support the dismissal of the enhancement due to countervailing factors, such as defendant's lengthy criminal history and escalating commercial narcotics activity. The court explained, "I don't see the types of interest of justice necessary to strike the [weight] enhancement which is the ten-year enhancement. Essentially, this is . . . as I pointed out, an escalation in quantity. This was not an isolated incident. We get that information from [defendant] himself, which actually factored into the mitigated primary term . . . . It's not enough, however, to overcome the enhancement as applicable."

B.    *Section 1385, Subdivision (c)*

Effective January 1, 2022, Senate Bill No. 81 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 721, § 1) amended section 1385 "to provide guidance regarding the exercise of discretion in dismissing sentencing enhancements." (*People v. Anderson* (2023) 88 Cal.App.5th 233, 238, review granted Apr. 19, 2023, S278786, review dism. and remanded Oct. 23, 2024.) As amended, section 1385, subdivision (c), provides, in relevant part: "(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that

enhancement is prohibited by any initiative statute. [¶] (2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove [one of nine specified] mitigating circumstances are. . . present. Proof of the presence of one or more of these [mitigating] circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal . . . would endanger public safety." (§ 1385, subd. (c)(1) & (2).) One such mitigating circumstance is that the current offense is "not a violent felony as defined in subdivision (c) of Section 667.5." (*Id.*, subd. (c)(2)(F).)

At the time the briefs were filed in this case, there was a split of authority regarding the application of section 1385, subdivision (c)(2). (Compare *People v. Walker* (2022) 86 Cal.App.5th 386, review granted Mar. 22, 2023, S278309, affirmed on other grounds by *People v. Walker* (2024) 16 Cal.5th 1024, (*Walker*); with *People v. Ortiz* (2023) 87 Cal.App.5th 1087, review granted Apr. 12, 2023, S278894, review dism. and remanded Oct. 23, 2024; *People v. Ponder* (2023) 96 Cal.App.5th 1042, review granted, Jan. 10, 2024, S282925, review dism. and remanded Oct. 23, 2024.)

In *Walker, supra*, 16 Cal.5th 1024, our Supreme Court resolved this issue. First, the court rejected the notion that when one of the enumerated mitigating circumstances is present, there is a rebuttable presumption in favor of dismissing the enhancement that can be overcome only by a finding that dismissal would endanger public safety. (*Id.* at pp. 1032-1033.) Instead, it held that even without a finding that dismissal would endanger public safety, trial courts retain the discretion to decide whether dismissal would further the interests of justice. (*Id.* at p. 1033.)

Second, the court clarified what it means for a mitigating circumstance to " 'weigh[] greatly in favor' (§ 1385, subd. (c)(2)) of dismissal." (*Walker, supra*, 16 Cal.5th at p. 1034.) Relying on the reasoning of *People v. Ortiz, supra*, 87 Cal.App.5th 1087, review dismissed and remanded, the court held that a trial court " must 'engage[] in a holistic balancing with *special emphasis* on the enumerated

13

mitigating factors,' in which the mitigating factors weigh 'strongly in favor of . . . dismissal' [citation] . . . . But ultimately, the court must determine whether dismissal is in furtherance of justice." (*Walker, supra*, at p. 1036.) The court clarified that in practice this means, absent a finding of danger to public safety, "the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' " (*Id*. at pp. 1036, 1038.)

In light of *Walker*, defendant argues the trial court failed to properly apply section 1385, subdivision (c)(2), because the court neither found that dismissal would endanger public safety, nor expressly considered the non-violent nature of his offenses. We are not persuaded.

The settled rule of appellate review is that a trial court's judgment is presumed to be correct, error is never presumed, and the appealing party must demonstrate error on the face of the record. (*People v. Davis* (1996) 50 Cal.App.4th 168, 172.) As the party attacking the sentence, defendant has the burden to affirmatively demonstrate the trial court misunderstood its sentencing discretion. (*People v. Lee* (2017) 16 Cal.App.5th 861, 866; *People v. Carmony* (2004) 33 Cal.4th 367, 376-377.) That burden is unmet here.

Defendant faults the trial court for failing to discuss the non-violent nature of defendant's offenses in rendering its ruling, but a court is not required to state reasons for declining to exercise its discretion to strike an enhancement. (*People v. Gillispie* (1997) 60 Cal.App.4th 429, 433; *People v. Mack* (1986) 178 Cal.App.3d 1026, 1033; see *In re Large* (2007) 41 Cal.4th 538, 550.) And other than the court's silence, defendant does not point to anything to support his claim that the court failed to consider the non-violent nature of his felonies. Absent such a showing, we must presume that the court was aware of and followed the applicable law to achieve legitimate sentencing objectives. (*People v.*

14

*Ramirez* (2021) 10 Cal.5th 983, 1042; *Ross v. Superior Court of Sacramento County* (1977) 19 Cal.3d 899, 913.)

The record supports this presumption. At the sentencing hearing, both the prosecution and the defense brought to the trial court's attention that the current offenses were non-violent, and defense counsel expressly argued that the court should strike the enhancement for this reason. In addition, the court discussed various mitigating and aggravating circumstances when explaining why it denied probation. We cannot conclude the court did not still have those factors in mind when it considered defendant's motion. We also see no basis to conclude that the court failed to consider and give "great weight" to the non-violent nature of defendant's current offenses. Instead, we infer the court weighed it and simply concluded, due to the presence of countervailing factors, that dismissal of the enhancement was not in furtherance of justice. (*Walker, supra*, 16 Cal.5th at pp. 1034-1038.) Accordingly, defendant has not met his burden to demonstrate that a remand for resentencing is required.

B.    *Court Discretion in relation to* Tirado

In *Tirado, supra*, 12 Cal.5th 688, the California Supreme Court held that section 1385 gives a sentencing court the discretion to strike a greater, charged firearm enhancement and impose a lesser, uncharged firearm enhancement, when the facts supporting the lesser enhancement were alleged and found true by the jury. (*Tirado, supra,* at pp. 692, 700.) Relying on *Tirado*, defendant argues that this matter should be remanded for resentencing because the trial court did not understand the scope of its discretion to strike the weight enhancement and impose a lesser, uncharged weight enhancement under Health and Safety Code section 11370.4.

The People contend, and we concur, that defendant forfeited the *Tirado* issue by failing to raise it below. Defendant was sentenced in December 2022, nearly a year after *Tirado* was decided. By failing to object at the sentencing hearing, defendant forfeited

15

his *Tirado* claim of error. (*People v. Scott* (1994) 9 Cal.4th 331, 353; *People v. Sperling* (2017) 12 Cal.App.5th 1094, 1100.)

Anticipating that the claim is forfeited, defendant claims that his counsel rendered ineffective assistance. He argues that defense counsel had "no rational tactical purpose for asking the court to strike a sentencing enhancement but failing to seek a reduced enhancement." We disagree. Given the length of the enhancement, and the mitigating factors, defense counsel reasonably could have decided it would be beneficial to frame the issue as an "all or nothing" choice between the ten-year enhancement and no enhancement at all. (*People v. Samayoa* (1997) 15 Cal.4th 795, 846.) Nor has defendant persuaded us that there is a reasonable probability he would have obtained a more favorable outcome had his counsel raised the issue.

IV

*Correction of Minute Order and Abstract of Judgment*

Although not raised by the parties, our review of the record reveals that the clerk's minute order and abstract of judgment do not accurately reflect the oral pronouncement of judgment insofar as they incorrectly state the sentence for count 1 was stayed under section 654 when, in fact, the court ordered it to be served concurrently, unstayed. When there is a discrepancy between the oral pronouncement of judgment and the minute order or abstract of judgment, the oral pronouncement controls. (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385.) Thus, we shall direct the trial court to modify the minute order and the abstract of judgment to conform to the oral pronouncement of judgment. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)

16

DISPOSITION

The trial court is directed to modify the sentencing hearing minute order and the abstract of judgment to reflect that the sentence for count 1 is to be served concurrently, not stayed under section 654, and forward a certified copy of the abstract of judgment to the Department of Corrections and Rehabilitation.  The judgment is affirmed.

_____\s\_____,
Krause, J.

We concur:

_____\s\_____,
Robie, Acting P. J.

_____\s\_____,
Feinberg, J.

17